Harmon, Colston, Goldsmith & Hoadly, for defendant.

---

(Hamilton County Court of Common Pleas.)

## AUGUST BORGMAN v. JOSEPH H. SPELLMIRE AND THE MILLS SPELLMIRE COMPANY.

1. When a lease is assigned by deed containing a recital that the grantee agrees to perform all of the stipulations and conditions of the lease and to take subject to them, the grantee, by accepting the conveyance, becomes primarily bound to the lessor, or to the owner of the fee, if the reversion has been assigned, to perform all of the covenants of the lease.

2. When the leasehold has been conveyed by several consecutive deeds, each containing such recital, the last grantee is bound primarily for the performance of the conditions of the lease; while the lessee and the several respective assignees of the leasehold are each secondarily liable, the lessee as guarantor, and the several assignees as obligors in separate contracts made for the benefit of the owner of the reversion.

3. When a lease, so assigned, with such recital, contains a covenant that the lessee will pay: "All taxes, charges, and assessments that might at any time during said demise be levied, charged, or assessed" on the leased premises or any part thereof, the last grantee of the leasehold and his immediate grantor are properly joined as defendants, in an action by the assignee of the reversion to enforce the covenant.

4. Such covenant embraces all assessments for street improvements not differing in kind from assessments for such purposes authorized by the laws of this state prior to and at the date of the execution of the lease, and not differing in nature from the settled policy of the state relating to assessments for street improvements and the burdens to be borne for their cost.

5. The "Granite Pavement Act" of 1885, (82 O. L., 156, et seq.,) is not a departure from such policy, does not differ in kind from assessments for street improvements authorized by the laws prior to and at the date of the execution of the lease, and assessments levied by virtue of its provisions during the term of a lease executed before it was passed are covered by such a covenant, as being fairly within the contemplation of the parties when the lease was made.

6. Such assessments are included within such covenant although they are not payable until after the term of the leasing has expired.

---

HOLLISTER, J.

Agger & Sanning were the owners of real estate on Sixth street, Cincinnati. On February 25th, 1882, they executed a lease thereof to George Crist and Frank V. Sowles, their heirs, executors, administrators and assigns, for 10 years, beginning March 1st, 1882. The lessees covenanted to pay $540 rental per annum, payable quarterly, and, "all taxes, charges and assessments, that might at any time during said demise be levied, charged, or assessed on said premises, or any part thereof." There was also a privilege of purchase at $9,000.

February 13th, 1883, Sowles quit-claimed his interest to Crist, who, it was recited in the deed, "agrees to pay all taxes and ground rent, and perform all the other obligations of said lease after January 1st, 1883. On April 18th, 1883, Crist conveyed the lease

by quit claim deed to Joseph H. Spellmire, his heirs and assigns. The deed contained this recital: "It being understood and agreed that the grantee hereby takes subject to the conditions and stipulations contained in the lease made by Peter Agger and Herman Sanning * * * and agrees to perform all the stipulations and conditions contained therein."

On September 13th, 1883, Spellmire, by quit-claim deed, conveyed all of his interest to The Mills Spellmire Manufacturing Company, its successors and assigns, it being recited therein, that the "grantee herein takes the said premises subject to the conditions and stipulations contained in the lease, * * * and agrees to perform all the stipulations and conditions contained therein."

The Mills Spellmire Mf'g. Co., went into possession and continued therein until the expiration of the term, on March 1st, 1892. The privilege of purchase was not exercised.

After The Mills Spellmire Mf'g. Co. acquired title to the leasehold, Agger & Sanning, the lessors, made a general assignment for the benefit of creditors, the deed being filed in the Probate Court on July 23rd, 1885.

Such proceedings were had in that court that in March, 1890, the assignee reported a sale of the property to August Borgman, "subject to said lease to George Crist & Co., and subject to all installments of the assessment for paving Sixth street, now unpaid," and on July 5th, 1890 the sale was confirmed, the deed was ordered to be made to Borgman, and the decree recited that: "said purchaser is hereby subrogated to all the rights of all lien holders in said premises."

The defendants paid the rent to Borgman, as it accrued, to the end of the term. Borgman has been the owner of the fee since the confirmation of sale.

Prior to 1885, Sixth street, in front of the premises had been improved and paved with Nicholson Pavement, or wooden blocks. On April 25th, 1885, the legislature passed what is known as the "Granite Pavement Act," (84 O. L., 156, et seq.) On October 2nd, 1888, the Board of Public Affairs of Cincinnati, passed an ordinance entitled "an ordinance to assess a special tax on real estate bounding West Sixth street, from Freeman avenue to Millcreek bridge, and to issue bonds in anticipation of the collection of such assessment." One half of the cost of the improvement was paid by the city and one half was assessed on the abutting property, including the premises under consideration. The assessment was payable in installments coming due in certain amounts each year for 10 years. The assessment could be paid in cash upon the sale of the bonds.

The amount charged against the property was $458.04 if paid within that time, but bore 5 per cent. interest on installments, if not. No part of this sum was paid in cash. The defendants paid the installments payable in 1889, 1890 and 1891; but did not pay the installments accruing in 1892, 1893

and 1894, and plaintiff was compelled to pay to protect the property from the lien. He seeks to recover these sums and the installments due in 1895, 1896, 1897 and 1898. Defendants failed to pay part of taxes for 1891, which plaintiff paid, and seeks to recover. The defendants were not parties to the proceedings in the probate court, nor was the lien for taxes or assessments represented by any party in that case. No order was made for the application of the proceeds of sale, and the assignee distributed the proceeds to creditors other than tax or assessment lien holders. The property was sold subject to liens, and no abatement or order of abatement was made, in the purchase price by reason of the liens.

The question for decision is, who shall pay these assessments and taxes, the plaintiff as owner of the fee, or the defendants or either of them as owners of the leasehold when the assessments were levied. There can be no doubt but that the proceedings under which the plaintiff obtained title are irregular. Under the law regulating sales of real estate by assignees in insolvency, the property is sold free of liens, and the lien of incumbrances of whatever kind is transferred from the land to the fund arising from the sale, and this is distributed by the assignee to those entitled thereto. Rev. Stat., 6350, 6351, and the maxium *caveat emptor* does not apply, Lindemann v. Ingham, 36 Ohio St. 1, 14. But as the probate court had jurisdiction, the irregularity of the order directing the sale to be subject to the covenants of the lease, cannot be collaterally inquired into, Shroyer v. Richmond, 16 Ohio St., 455. See also Sheldon v. Newton, 3 Ohio St., 494; Benson v. Cilley, 8 Ohio St., 604; Miller v. Greenham, 11 Ohio St., 486; Holloway v. Stuart, 19 Ohio St., 472; Arnold v. Donaldson, 46 Ohio St., 73. It will be noticed that Stone v. Strong, 42 Ohio St., 53 was in error to a judgment of the probate court.

The defendants cannot therefore derive any advantage from the irregularity of the order of sale; besides, as they have attorned to the plaintiff and paid him the rent reserved in the lease, they may not now impeach his title for the purpose of evading the terms of the lease. If the covenant in the deed to the plaintiff means anything, it is that as between him and the assignee of Agger & Sanning, he has agreed to discharge the liens and relieve their assignee from the plain requirement of law that the liens shall be paid out of the proceeds of sale. How far the lien-holder might be benefitted by this arrangement, under the rule that a third person may recover on a contract made by others for his benefit, Crumbugh v. Kugler, 3 Ohio St., 549; Thompson v. Thompson, 4 Ohio St., 333; Eummit v. Brophy, 42 Ohio St., 82, is not in issue here, for the lien-holder is not a party to the suit.

If in fact and in law the defendants have agreed with the plaintiff to pay the assessments, it can make no difference to them that the plaintiff agreed with his grantor to

hold him harmless. The land was subject to this lien when Agger & Sanning were the owners, the defendants' agreement to pay was with them, their heirs and assigns. Their assignee in insolvency took their interest with the additional power to transfer the liens to the fund arising on sale, not of the leasehold, but of the land itself. The leasehold remained intact during the entire proceeding, and when the plaintiff got the property it was subject to the lease, and the agreements therein contained. The right to the rents and other payments was assignable in equity. The plaintiff, as the owner of the reversion is the real party in interest, and, if anyone, other than the lien-holder can compel the defendants or either of them to pay the assessments, it is the plaintiff. Masury v. Southworth, 9 Ohio St., 341; Smith v. Harrison, 42 Ohio St., 180. The covenants to pay rents, taxes and assessments run with the lands, Post v. Kearney, 2 N. Y., 394; State v. Martin, 14 Lea, 92; Worthington v. Cooke, 52 Ind., 297; Salisbury v Shirley, 66 Cal., 223; Ellis v. Bradbury, 75 Id., 234, and this is true whether the assignee of the term becomes such by assignment from the lessee, or by purchase at sheriff's sale. Sutliff v. Atwood, 15 Ohio St., 186

The conclusion on this point must be, that as between the assignee of the reversion and the assignee of the leasehold, there is such privity of estate existing that the former may recover of the latter upon the covenant to pay taxes and assessments. But are both defendants liable? The lessee is bound by contract to pay the lessor, his heirs and assigns, so the lessee is liable for the rent accruing during the entire term, even to the assignee of the reversion, Smith v. Harrison, supra; Sutliff v. Atwood, supra. The assignee of the lease is liable through privity of estate, as shown. In the case last cited, it is held that as between the lessee and his assignee, the latter is primarily liable, and that the lessee's liability is in the nature of a security; and further, that the assignee is only liable for breaches of covenant during his ownership. If there were nothing else than a mere assignment of the lease to Spellmire, followed by a transfer of his interest, it would seem that he could be held only for breaches during his ownership; but it will be remembered that he agreed specifically by his acceptance of the assignment. (Hickey v. Railway Co., 51 Ohio St., 40,) to perform all of the conditions and stipulations contained in the lease. This is clearly an agreement made by him with his grantee for the benefit of whomsoever might be entitled to the enforcement of conditions and stipulations, as well as an express promise with his grantor to save him harmless.

Each separate grantee specifically agreed to perform all of the conditions of the lease; under the authorities cited each is liable upon the express promise made for the benefit of the owner. A part of the consideration for the transfer in each case was the assumption by the grantee of the conditions and stipula-

tions of the lease. Upon this agreement the person entitled to the rents and entitled to have the taxes and assessments paid, may maintain an action of assumpsit. See remarks of Judge Thurman, Thompson v. Thompson, 4 Ohio St., 333, at p. 354.

The situation between the owner of the fee, the last assignee, and his immediate grantor is very much the same as in a case where the lessee is liable in express covenant, and his assignee through privity of estate, as in Harrison v. Smith, supra; so much so that by analogy, that case may be and will be regarded as authority on this point in this case. See also Coal Co. v. Peers, 39 Ills., App. 453. If this conclusion is correct, the defendants are properly joined.

But it is urged by the defendants that the kind of assessment which was levied during the term was not in contemplation of the original parties when the contract of lease was entered into; that it is unusual and extraordinary in its nature; that it was levied long after the lease was made, under an act of the legislature passed after that time, and that it is a permanent improvement of advantage to the owner of the fee.

This question is not without difficulty. Much stress is laid by defendants on the case of Boers v. Barrett, 2 Sup. Ct. Rep., 67. There it was held, that an assessment for the construction of a sewer is a charge for a permanent addition to the freehold, and although the lessee of the five year term agreed, as may be learned from the context, the exact language of the agreement not appearing, to pay state, county or municipal assessments, yet the assessment for such purpose is to be paid by the owner of the fee or of a perpetual leasehold, and not by the lessee of a short term.

The statute under which the improvement was made was in existence at the time the lease was made, and gave a lien for the cost. One part of the decision is clearly in favor of the plaintiff, but it was decided that: "The word "assessment" which is equivalent to the words "imposition," "duty," or "tax," must have a reasonable construction. It must mean ordinary charges that a municipal corporation imposes from year to year, and which are for the benefit more particularly of the occupants of the property, such as lighting the streets, water-rents, and such other incidental taxes that the necessities of the city government may require, and not such improvements as are really permanent and therefore especially benefit the owner of the lot." The only authority cited was Twycross v. Fitchburg Railway Co., 10 Gray, 293..

In that case the plaintiff had leased a lot to defendant for 15 years, the lessee covenanting "to pay all taxes and duties levied, or to be levied thereon during said term. After the lease had run 10 years, the city of Charlestown, under legislative sanction in existence long before the lease was made, caused a side-walk to be constructed, the plaintiff failing to do so after notice. The plaintiff paid the cost and sought to recover

from his lessee. The statute did not impose any lien on the property, and clearly provided for a recovery by the city of the cost of the side-walk from the owner himself. The court say: "In the light of these provisions, and without seeking to determine what possible burdens upon the estate, may be included under the terms "taxes and duties," we think it quite clear that the expense of constructing the side walk was not a tax or duty levied or to be levied upon the premises demised," and, as touching the question as to what the parties had in mind at the time, it is said: "In looking at its (the statute's) provisions, the tenant might see that they would not affect him, because the statute caused no tax or duty to be levied upon the premises demised."

Twycross v. Fitchburg Ry. Co. was considered and distinguished in Codman v. Johnson, 104 Mass., 491. There the lessee for a term of 20 years, covenanted to pay "all taxes and assessments, whether in the nature of taxes now in being or not, which may be payable or assessed in respect of the premises, or any part thereof, during the term." The city of Boston under a statute enacted prior to the execution of the lease, ordered that the street on which the lot abutted should be widened. The assessment for the improvement was levied the year after the lease was made. It was held that the assessment was in the nature of a special tax for a public purpose. The court defined the term "assessment" by saying that it "is applied to impositions of this nature, because they are levied in respect to particular estates, to distinguish them from the ordinary ratable taxes."

The case differs from the case at bar. The lease was for a much longer term which might justify the lessee in bearing the burden of a permanent improvement, and the law under which the assessment was made was in existence at the time the contract of leasing was entered into. But Twycross v. Fitchburg Ry. Co., was distinguished because in that case the burden was on the owner alone, and the assessment was not levied on the estate, and was not made a lien thereon. And so that case may be as easily distinguished from Boers v. Barnett.

Codman v. Johnson, clearly turned on the points that the assessment was a lien, the estate was for a long term, and on the opinion which the court gave the word "assessment," and the terms of the covenant.

Instruction may also be had from Walker v. Whittemore, a subsequent Massachusetts case, 112 Mass., 187. There the lease was for 21 years, the lessee covenanted "to pay * * * all and singular the taxes, rates, charges and assessments which shall or may from time to time and at any time during said term be levied, assessed, or made on the demised premises, or in respect of the same, for or on account of any cause whatever." The cost of a certain betterment of a street the court required the lessee to pay, notwithstanding the fact that the law

under which it was made was passed after the lease was made, on the ground that the language of the covenant was comprehensive enough to embrace it It was said that the words "import that the lessors were to receive the stipulated rent absolutely, and subject to no deduction."

Boers v. Barnett is not justified by Twycross v. Railway Co., nor by any subsequent decision in Massachusetts. Much reliance is placed by defendants on two Rhode Island cases: Love v. Howard, 6 R. I., 116; Beals v. Providence Rubber Co., 11 R. I., 381. But they do not seem to be apt authority for defendants. In the first an assessment was levied for improving a street in Providence under a legislative act, imposing a special assessment on abutting property for the purpose of defraying the cost, while theretofore all public improvements of similar nature had always been paid out of the general tax fund. Of course such a tax could not have been in contemplation when the lease was made. The language was to pay in "all taxes and assessments that may at any time during said term be assessed upon said lot or its appurtenances." The court after reviewing the English cases deduces this rule:"

"The rule recognized and adopted in these cases is, that if the tax or assessment be made under a law existing at the time of the covenant, it is within it; or, if there be no law existing at the time authorizing or requiring it, but it is afterwards enacted, still, if the assessment or tax be of the same kind with taxes or assessments made under former acts, it is presumed to have been in the contemplation of the parties, as a tax *in viris*, though not *in esse*. But if such tax or assessment be different in kind from such as have been heretofore *in esse*, it is not to be presumed that the parties contemplated any unusual exercise of power in the legislature, such as it had never before exercised."

It was therefore held, that the covenant to pay assessments did not cover the kind of assessment in question. In the second case the covenant was "to pay the taxes of every name and kind that should be assessed in the premises at any time during the said term." This case was decided in favor of the lessee, for the reason that taxes and assessments are quite different in meaning, and as the assessment for street improvement was special in its nature levied because of and justified only because of special benefits conferred upon the particular ground in question, such assessment was not within the meaning of the covenant. The court, after referring to some of the Massachusetts cases, distinguish them and remark: "No case is cited in which, in the absence of any such additional words (as rates, duties, assessments,) a lessee has been held liable for assessments."

For similar reasons Municipality v. Curell, 13 La., 318, where the covenant was to pay all taxes, and it was sought to hold the lessee of a 20 year lease for the cost of

side-walk construction authorized by the legislature prior to the execution of the lease, may not be regarded as authority. Nor does Bolling v. Stokes, 2 Leigh, 194, strengthen defendant's contention. The lessee had a five years lease in which he covenanted to pay "all taxes and other public dues in any manner accruing." Two years prior to its execution, an act was passed authorizing the paving of the street in front of the premises. It was held that the lessee was not liable because the words of the covenant might "be satisfied by the application of them to the ordinary and usual taxes and public dues," and further that the assessment was a charge on the person of the proprietor and not on the lot.

Torrey v. Wallis, 3 Cush.,442, may be distinguished from the case at bar in several particulars, more especially because the statute assessed the cost of paving the street against the owner, and no lien was imposed on the premises, and that it was clear that the covenant to pay "all costs, expenses, and charges, except the yearly tax," related to certain improvements which its lessee agreed to make upon the property.

In Blake v. Baker, 115 Mass., 188, it was held that the lessee of a term for 3 years with covenant to pay "all taxes and duties levied or to be levied thereon during the term, was liable for an assessment for a street improvement." The case differs from the case at bar only in that the term was for 3 years instead of 5, the act under which the improvement was made was passed before the lease was entered into, and the word "assessment" is not used. The mere fact, therefore, that the lessee's estate may be lacking in permanency and the circumstance that the assessment-act was passed after the term began, are clearly of little weight, if the assessment in question is covered by the language of the covenant. See also, Post v. Kearney, 2 N. Y. 394; Bleeker v. Ballou, 3 Wendell, 263.

There can be no doubt that in the minds of the parties to this lease, the owner was to be relieved by the lessee from the payment of taxes in their ordinary sense, and of assessments as that word is usually regarded, i. e., a special imposition for a special purpose beneficial to the land. These words are used in the agreement, although the lessee knew that assessments meant such special impositions as were only justified because of the special benefits flowing therefrom to the property and that they are a personal charge against the owner only in respect to the property. That they are so regarded is settled, Douglas v. Cincinnati, 29 Ohio St., 165.

Is this assessment of so extraordinary and unexpected a nature that it would not have been in contemplation of the parties? If assessing abutting property for street improvements had been first initiated in Ohio by the Granite Pavement Act, there might be something in the claim, and authority might be found in the Rhode Island case.

But such assessments have been known in Ohio almost from the beginning. Under sec. 2264, Rev. Stats., they may be levied upon abutting lands, and the power of levying impositions of this kind is "one of the most important * * * conferred upon municipal corporations." Hill v. Higdon, 5 Ohio St., 243; Moloy v. Marietta, 11 Ohio St., 636; Lima v. Cemetery, 42 Ohio St, 128; Jessing v. Columbus, 1 C. C, 90.

Now the assessment complained of does not differ in kind from an assessment for street improvements by bowldering, macadamizing, or by wooden blocks. The only difference is in the material. And the act provides for an assessment of only half the cost on abutting property, as if to compensate for any additional cost, although the record does not show that granite is more expensive than wood or broken stone. The assessments are identical in kind. If the council under sec. 2264, could improve a street by paving it with bowlders, Jessing v. Columbus, supra, why not with granite? It is true it could not issue bonds, or assess only half the cost on the property. It could assess it all, and make it payable at once. But the additions in power given by the act are both in favor of the one who pays the assessment, he cannot for these reasons successfully claim that the authority to assess, and the assessment are different from the powers of assessment and kinds of assessments theretofore existing and of frequent exercise.

Applying the rule adopted in Love v. Howard, *supra*, the assessment provided by the act not differing in kind from assessments for similar purposes by virtue of laws in existence at the time the lease was made, it must be held that an assessment of this kind was *in viris* at that time, and that it fairly comes within the meaning of the covenant. It will be observed, that the entire policy of the state of Rhode Island, with respect to the assessment and collection of the cost of street improvements was changed by the act of 1884, while the Granite Pavement Act is in full accord with the policy of this state from the beginning.

But it is claimed that these taxes and assessments were not assessed "upon the premises." It has been shown that assessments of this kind are only justified by the fact that the land is benefitted and "in so far as they are made a personal charge on the owner, it is only in respect to the property." Sec. 7 of the act provides: that one half of the cost "shall be assessed upon the parcels of land abounding and abutting upon the improvement, in the manner provided by law." Clearly if the owner does not pay, the assessment is levied on the very premises themselves, and the defendants agreed expressly to pay it and the taxes.

It is not material that the assessments and taxes were payable after the term lapsed. Craig v. Heis, 30 Ohio St., 550; Blake v. Baker, 115 Mass., 188; Wilkinson v. Libbey, 1 Allen, 375; Amory v. Melvin, 112 Mass., 83; Paul v. Chickering, 117 Mass., 265; Craig v. Summers, 47 Minn., 189.

The assessing ordinance was passed Octo-

ber 2nd, 1888, and the assessments became a lien from that date, Cincinnati v. Sear ingood, 46 Ohio St., 296, 302. It was within the power of the defendants to pay the entire amount at once; they preferred to pay on the installment plan, but the lien was still there for so much as remained as from time to time installments were paid, and they are liable for all installments. Some of them are payable after this suit was brought, and hence were not then due; if not due, defendants cannot be required to pay them in advance. Doubtless if under judicial proceeding the property was sold and the city were brought in, the entire present worth would have to be paid. Moer- lin v. Whitmeier, 4 C. C. 296.

If under such circumstances plaintiff were compelled to pay it, he could recover from defendants. But plaintiff's right of action grows out of the fact that he has paid that which the defendants have agreed with him to pay. The plaintiff could not now pay assessments to become due even if he wished to do so; nor can the defendants do so. Perhaps the defendants will pay future installments as they become payable.

From these considerations it must follow that plaintiff is entitled to recover in this suit from the defendants, all taxes and assessments payable at the time the action was commenced, and the demurrer to defendants' answer must be sustained.

.Edward Barton, for plaintiff.

D. F. Cash and Geo. H Spellmire, for defendants.