BLEECKER vs. BALLOU.

DEMURRER to declaration. The plaintiff declared in *covenant*, for that he, together with several other persons, on the 10th November, 1806, executed an indenture of lease to the defendant of a lot in the village of Utica, for a term commencing in July, 1808, and ending in January, 1829, reserving an annual rent; that by the indenture of lease, the defendant covenanted, at his own proper costs and charges, *to bear, pay and discharge all taxes, charges and impositions,* which the premises were subjected to an assessment for pitching and *paving a street,* under an act incorporating the village and authorizing such assessment, passed subsequent to the date of the demise; *it was held,* that by the terms of the covenant, the tenant was liable to pay the assessment, although the expenditure was for a permanent benefit, extending beyond the term.

*Where a tenant took a lease of a village lot for 21 years, and covenanted to pay all taxes, charges and impositions which should be imposed upon the demised premises; and during the term,*

UTICA,
August, 1829.

Bleecker
v.
Ballou.

should be taxed, charged, imposed or assessed 'upon the de-mised premises, or any part thereof; that in 1809, the inter-est of his co-lessors vested in the plaintiff; that on the 1st Ju-ly, 1825, the board of trustees of the village of Utica, by vir-tue and in pursuance of the act of the legislature incorpora-ting the village, passed April 7, 1817, ordered and directed a street in the village, on which the demised premises are situ-ate, to be pitched and paved: that they caused an assessment of the expense to be made on the owners, occupants and oth-ers interested in all the houses and lots intended to be bene-fitted by the improvement, in proportion to the advantages which each were deemed to acquire; and the sum of $40,50 was assessed on the demised premises to the plaintiff, as the owner thereof, which remaining unpaid, the right and title of the plaintiff to the demised premises was sold on the 11th April, 1826, for the term of one year and nine months, being the lowest term of time offered at which the premises would be taken for paying the said assessment. The plaintiff aver-red notice to the defendant, a requirement to pay the assess-ment, and the defendant's refusal; and so he alleged the de-fendant had broken his covenant, &c. The defendant de-murred, and the plaintiff joined.

*T. E. Clark*, for defendant. The covenant of the defend-ant does not embrace an assessment for *paving streets*. *Tax-es* are burdens, charges or impositions for the benefit of *the public*. (81 Johns. R. 77.) Taxes charges and impositions mean *the land tax*, or taxes *ejusdem generis*. (3 T. R. 461.) A covenant to pay all taxes, duties, assessments and imposi-tions does not embrace the repair of a *party-wall*. (8 T. R. 602. 3 id. 458. Woodfall, 258, 9.) Extraordinary re-pairs, which tend to the benefit of the inheritance, a lessor, reversioner or remainderman may be assessed to pay. (6 Com. Dig. tit. Sewers, E, 5.) Every person ought to be char-ged in proportion to his profit. (id.)

The law authorizing the assessment was not in force at the time the indenture was executed, nor until ten years after-wards; this assessment cannot, therefore, be presumed to have been in the contemplation of the parties, and for that reason cannot be nonsidered as comprehended in the cove-

nant. (Salk. 198. Ld. Raym. 318, S. C. Carthew, 438.  
12 Mod. 169, 70. 2 Lev. 68.) This case is distinguisha-  
ble from 10 Johns. R. 96, and 11 id. 443. In those cases,  
the *tenants* were assessed; here, the assessment was imposed  
on the *landlord*, according to the advantage derived by him.  
In those cases, the law authorizing the assessment was in  
force at the execution of the leases, which circumstance is par-  
ticularly alluded to by the court, as authorizing the presump-  
tion that the assessment must have been in the contemplation  
of the parties; here, the law under which the assessment was  
had did not exsist until long after the demise, and the situa-  
tion of the property in 1806 was such that it could not have  
entered into the contemplation of the parties that by possibili-  
ty it could be subjected to charges of the nature which have  
produced this suit.

*C. A. Mann*, for plaintiff. The demand in this case falls  
within the plain sense and terms of the covenant, and the de-  
fendant is therefore liable. In *Giles* v. *Hooper*, (Carthew,  
135,) where the question arose on a lease for years, render-  
ing rent, free and clear from all manner of taxes, charges and  
impositions whatever, (the very language of the covenant here,)  
it was ruled that there should be no deduction for a land tax  
imposed by statute subsequent to the lease, for the covenant  
extended to every old and *new charge whatsoever*. So, also,  
the rule is laid down in Woodfall, 254, and Bac. Abr. tit. Cov-  
enant, F. In cases similar in principle and circumstances to the  
one now under consideration, this court have held the tenant  
bound. (10 Johns. R. 96, and 11 id. 443.) It is impossible  
to draw a line of distinction as to what charges and imposi-  
tions the tenant shall, and what he shall not be liable to pay.  
Having bound himself to pay *all* taxes, charges and imposi-  
tions he cannot complain that he is required to fulfil his covenant.  
The court cannot look into equitable considerations. Was it  
allowable, it might be readily shewn that the enhanced value  
of the demised premises was more than an equivalent for the  
charges imposed, considering the lowness of the rent re-  
served.

UTICA,  
August, 1829.  
~~~  
Bleecker  
v.  
Ballou.

</div>

*By the Court,* SAVAGE, C. J.   Had there been no decisions of courts upon similar covenants, I should think it clear that the parties intended precisely what the language of their contract imports ; that the lessee ran the risk of *all* taxes, charges and impositions.   These are not words without meaning ; nor can I suppose that they were used as synonymous.   They import that the landlord was to receive his rent, and during the term, was to be subject to no expense on account of the demised premises.   Such is the language of this court in the case of *The Corporation of New-York* v. *Cushman,* (10 Johns. Rep, 97,) upon a similar covenant. By the terms of the covenant in that case, the tenant bound himself to pay " all such duties, taxes, assessments, impositions and payments, as shall during the term hereby demised be issued or grow due and payable out of and for the said demised premises."   The action there was for an assessment on the lot for its benefit, by the extension of Chamber street ; and the court said the demand falls within the plain sense and language of the covenant.   They enter into an examination of some of the English cases, and shew upon the principles acted on in some of them, that the assessment was binding on the defendant.

There is no doubt that the assessment in question was not a *tax,* that being a sum imposed, as it is supposed, for some public object.   (11 Johns. Rep. 77.)   And as to such, it is said that a covenant like the one in question must be enforced without any deduction for a tax imposed by statute subsequent to the lease, (Carth. 135 ;) but in other cases it is said that a covenant to pay taxes extends only to taxes in use when the lease is executed.   (2 Lev. 68.)   In the case of *New-York* v. *Cushman,* the court say that the assessment was made by virtue of a law in force when the lease was made, which it was presumed was in the contemplation of the parties.   But in *Brewster* v. *Ketchin,* Ld. Raym. 317, a covenant to pay a rent charge without deducting for any taxes, was held to extend to all taxes of a similar nature, and for like purposes with any before imposed though not then subsisting.   If this principle be correct, then, charges and impositions may refer to such charges and impositions as are known to be made upon other property similarly situated.

The premises in question were leased as a village lot, and therefore the parties may have anticipated that within the term granted some improvements might become necessary and proper, which would require charges and impositions. If the covenant is to be confined to such charges as were imposed when the lease was executed, the tenant was not liable to pay the United States tax which was subsequently imposed; and for the same reason, he should not be required to pay any tax growing out of an expenditure under any laws of the village. Such a construction would not meet the views of the parties when they entered into the contract. At that time no doubt a rent was agreed on proportionate to the then value. If the property became enhanced in value, the defendant had the benefit of the increased value. And if the improvement of the property required some expenditure, there is no hardship in such expenditure being made by the tenant, who has reaped the advantage. It is true the *paving* is a permanent benefit to the property, and extends beyond the term; and although that may benefit the landlord, yet it cannot be said to injure the tenant. The terms of the contract seem to me to be clear and explicit, and upon them I place my opinion. The plaintiff is entitled to judgment on the demurrer.