J. LANGDON WARD et al., as Trustees under the Will of MARY M. JONES, Deceased, Appellants, *v.* UNION TRUST COMPANY OF NEW YORK, Respondent.

Landlord and tenant — covenant in lease that lessee shall pay all rates, taxes and assessments — when such covenant includes taxes imposed under laws afterward enacted during term of lease.

1. A covenant that a lessee shall pay all rates, taxes and assessments for which the premises shall be liable includes not only such charges as may be imposed by laws then in force, but also such as may be authorized by laws afterward enacted.

2. This is an action upon an express covenant contained in a lease. The promise of the lessee was " to pay and discharge all annual taxes as shall during said term be imposed on said premises hereby demised as soon as they become due and payable," and " keep said demised premises free, clear, discharged and unincumbered from all such taxes  *  *  *  during said term." The ·lease was made for a term commencing on the 1st day of May, 1909, at noon and ending on the 1st day of May, 1914, at noon. This action is brought to recover taxes paid by the lessor for the year 1914. At the time the lease in controversy was executed the taxes in the city of New York were payable on the first Monday in October in each year. By section 8 of chapter 455 of the Laws of 1911, which became effective January 1, 1912, the charter of the city, as amended, provided that " All taxes upon personal property and one-half of all taxes upon real estate shall be due and payable on the first day of May and the remaining and final one-half of taxes on real estate shall be due and payable on the first day of November. All taxes shall be and become

liens on the real estate affected thereby on the respective days when they become due and payable as hereinbefore provided and shall remain such liens until paid." *Held*, that the payment of the tax comes precisely within the terms of the contract made by the lessee; that the lessors and the lessee assumed the risk of changes in the charter of the city that might affect the interests of either, and that the lessee was liable for the amount of taxes due and payable on the date of the expiration of the lease. (*Herald Square Realty Co.* v. *Saks & Co.*, 215 N. Y. 427, 432, distinguished.)

*Ward* v. *Union Trust Co.*, 172 App. Div. 569, reversed.

(Argued May 7, 1918; decided June 11, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 7, 1916, affirming a judgment in favor of defendant entered upon a dismissal of the complaint on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry W. Hayden* and *W. K. Post* for appellants. Annual taxes are imposed when the assessment rolls are delivered by the president of the board of aldermen to the receiver of taxes with the warrant for their collection. (*Ogden* v. *Getty*, 100 App. Div. 430; *Wilkinson* v. *Libbey*, 1 Allen, 375; *Amory* v. *Melvin*, 112 Mass. 83; *Richardson* v. *Gordon*, 188 Mass. 279; *Craig* v. *Summers*, 47 Minn. 189; *Blythe* v. *Gately*, 51 Cal. 236; *McManus* v. *Shoe & Clothing Co.*, 60 Mo. App. 216.) Under the covenant in the lease to pay all taxes imposed upon the demised premises during the term, the defendant is obligated to pay all the taxes for 1914. (*Ogden* v. *Getty*, 100 App. Div. 430; *New York* v. *Cushman*, 10 Johns. 96; *Bleecker* v. *Ballou*, 3 Wend. 263; *Post* v. *Kearney*, 2 N. Y. 394; *Walker* v. *Whittemore*, 112 Mass. 187.)

*Perry D. Trafford, Wolcott G. Lane* and *John B. B. Fiske* for respondent. The words " annual taxes," stipulated in this lease to be paid by the tenant, should

be construed to mean five years' taxes — not six years' taxes — for the five years' term. (*Ogden* v. *Getty*, 100 App. Div. 430; *Simon* v. *Etgen*, 213 N. Y. 589; *H. S. Realty Co.* v. *Saks & Co.*, 215 N. Y. 427; *Curtis* v. *McCullough*, 3 Nev. 202.) Even construing the words used in this lease in the narrowest possible sense, they must be held to mean a complete fixation of the taxes including the establishment of a lien so that the most that can be .claimed is that the respondent became liable for the first half of the 1914 taxes. (*Gray* v. *Board of School Inspection*, 231 Ill. 63; *Doan* v. *Fallen*, 4 Mo. App. 396.)

CHASE, J. This is an action upon an express covenant contained in a lease. The facts are admitted. So far as now material they are that the trustees under the will of Mary Mason Jones,. deceased, executed as lessors to the Plaza Bank as lessee, a written lease of premises on Fifth avenue, New York city, for a term of five years, commencing on the first day of May, 1909, at noon, and ending on the first day of May, 1914, at noon, at a rent to be paid as therein provided. The lease contained a covenant as follows: " Provided always and the lessee hereby covenants to pay said rent punctually, and to pay and discharge all annual taxes as shall during said term be imposed on said premises hereby demised, as soon as they become due and payable, and to pay the Croton and all other water charges as soon as the same shall become due, and to keep said demised premises free, clear, discharged and unincumbered from all such taxes and Croton and other water charges during said term, and to put and keep the said premises in good order and repair, and in all respects promptly comply with and execute all the laws, orders and regulations of the State and municipal authorities applicable to said premises; except as hereinafter provided with respect to the widening of Fifth Avenue."

The Plaza Bank occupied the premises described in the lease for sixteen years prior to the commencement of the term as therein provided pursuant to two similar leases, one for ten years commencing May 1, 1893, and the other for six years commencing May 1, 1903, and it had paid the rent and taxes as provided during said terms. The bank continued in possession under the lease in controversy until December 22, 1911, when it merged under the State Banking Law with the Union Trust Company of New York, the defendant in this action. The bank paid the taxes for the years 1909, 1910 and 1911, pursuant to said covenant. The defendant trust company continued in possession of said lease from December 22, 1911, until May 1, 1914, at noon, and paid the taxes pursuant to said covenant for the years 1912 and 1913. It refused to pay any part of the taxes for the year 1914, and the plaintiff subsequent to such refusal and on June 3, 1914, paid the first half of the taxes on the demised premises for that year amounting to $5,117.50, and on November 25, 1914, the second half thereof amounting to $5,117.50. This action is brought to recover the taxes so paid by the plaintiffs for the year 1914. At the time the lease in controversy was executed and for many years prior thereto, the assessment rolls of the city of New York, had pursuant to the charter of said city been delivered to the receiver of taxes of the city, with the warrant for the collection of taxes therein specified on or before the 15th day of September, and they were payable on the first Monday of October in each year.

By chapter 455 of the Laws of 1911, which became effective January 1, 1912, it was provided that the board of taxes and assessments should cause the assessment rolls to be prepared (Section 907) and that the board of aldermen should properly estimate and compute the " taxes annually imposed," and cause the same to be

properly set down or extended in the several assessment rolls (Section 909), and that on or before the 28th day of March the board of aldermen should deliver the assessment roll of each borough, with the proper warrant annexed, to the receiver of taxes, to collect the same from the several persons named therein (Section 911). The charter as so amended provided that " All taxes upon personal property and one-half of all taxes upon real estate shall be due and payable on the first day of May and the remaining and final one-half of taxes on real estate shall be due and payable on the first day of November. All taxes shall be and become liens on the real estate affected thereby on the respective days when they become due and payable as hereinbefore provided and shall remain such liens until paid." (Section 914.)

The taxes became liens accordingly for the years 1912, 1913 and 1914. The assessment rolls for the year 1914 were delivered to the receiver of taxes, together with the warrants for the collection thereof, on March 27, 1914, and contained a tax of $10,235 on the demised premises. One-half of the amount of such tax for the year 1914 became due and payable on the day on which the term of the defendant's lease expired.

It is probably true that a change in the charter of the city of New York was not particularly considered by either of the parties to the lease prior to its execution. It is to be assumed that the parties thereto intended that the landlords would deliver the possession of the property to the tenant free from all general taxes that were due and unpaid, and that the tenant pursuant to its covenant would return them to the landlords at the end of the term free from general taxes then due and unpaid. If that was not the intention of the contract and the obligation of the parties, then the landlords will receive their property burdened with an unpaid tax that cannot be

charged to a new and subsequent tenant as current general taxes to become due and payable after the beginning of the new term. It becomes a question, therefore, whether the lessors or lessee must bear the burden of the general taxes which became a lien upon the demised premises at or prior to the expiration of the lease in controversy.

The question involved is not one of equity in view of subsequent events or otherwise, but of simple contract between the parties interpreted in view of the circumstances and surroundings existing at the time the lease was executed, and in view of the possibility of changes in the time and manner of paying the general taxes of the city of New York.

The fiscal year of the city of New York is co-extensive with the calendar year. The term of the lease in controversy commenced within one fiscal year and ended in the sixth fiscal year thereafter, counting both the fiscal year in which the lease commenced and ended.

The promise of the lessee was " to *pay and discharge all annual taxes* as *shall during said term be imposed* on said premises hereby demised *as soon as they become due and payable,*" and " *keep said demised premises free, clear, discharged and unincumbered from all such taxes* * * * *during said term.*" The words " annual taxes " are used to describe the general taxes in the city of New York as distinguished from special assessments. It is descriptive of the kind of taxes to be paid by the tenant and includes the aggregate or total of taxes for general purposes. Reading the covenant as a whole, the promise of the tenant includes the general taxes imposed and becoming due and payable within the term. The demised premises became incumbered with one-half of the tax of 1914 on May 1, 1914.

The lessee could not leave the demised premises free, clear, discharged and unincumbered from taxes during

said term if the taxes so actually due and payable on the date of the expiration of the lease were left unpaid. The payment of the tax comes precisely within the terms of the contract made by the lessee and we can only consider and enforce it.

By the lease the lessors and the lessee assumed the risk of changes in the charter of the city that might affect the interests of either. Not only is the meaning of the covenant reasonably clear, but the conclusion reached by us is sustained in principle by the authorities.

In *Walker* v. *Whittemore* (112 Mass. 187) a lease included a covenant by the lessee to pay " All and singular the taxes, rates, charges and assessments which shall or may from time to time and at any time during said term be levied, assessed or made on the demised premises or in respect of the same for or on account of any matter or cause whatever."

The court held that " these words are sufficient to cover and must have been intended to cover all possible forms of taxation." The court further say: " They import that the lessors were to receive the stipulated rent absolutely and subject to no deduction. (*Bleecker* v. *Ballou,* 3 Wend. 263.) It is a charge upon the owner by reason of his ownership against which he undertook to guard himself by the terms of his lease."

In *Bleecker* v. *Ballou* (3 Wend. 263, 266), referred to in the *Walker* case, the tenant covenanted to pay " All taxes, charges, and impositions, which should be taxed, charged imposed or assessed upon the demised premises." During the term the premises were subjected to an assessment for paving a street under an act incorporating the village and authorizing such assessment, which was passed subsequent to the date of the lease. The court say: " Had there been no decisions of courts upon similar covenants, I should think it clear that the parties intended precisely what the language of their contract imports;

that the lessee ran the risk of *all* taxes, charges and impositions. * * *. They import that the landlord was to receive his rent, and during the term, was to be subject to no expense on account of the demised premises."

In *Post* v. *Kearney* (2 N. Y. 394, 396) the lessee covenanted to pay " all assessments for which the premises shall be liable." It was held that an assessment subsequently imposed for opening a street, although it was not authorized by law existing at the time the lease was executed, should be paid by the lessees. Judge GARDNER, speaking for the court, said: " It is insisted that the assessment in question is * * * not within the contemplation of the parties, or the law, as a part of the rent reserved; that no assessment but those, authorized by the law existing at the execution of the lease, are within its terms." He further said: " The covenant is, we think, perfectly plain; and unless there is some law that prohibited parties from making their own contracts, the defendant must abide by the one he has voluntarily assumed."

In *City of Norfolk* v. *Perry Co.* (108 Va. 28; affd., 220 U. S. 472) it was held that the covenant of a perpetual lease holder with his municipal lessor to pay public taxes which shall become due on the land embraces municipal taxes whenever they can thereafter be lawfully assessed on the land or the improvement which was part of the land, although when the lease was made the municipality had no power of taxation. A municipal corporation may lay taxes upon land which it has let at an annual rental for a term of ninety-nine years renewable forever to one who covenants to pay in addition to the rent the public taxes levied on the property.

In *Mayor, etc., of New York* v. *Cashman* (10 Johns. 96) the covenant under consideration extended to all taxes, assessments, impositions and payments payable out of and for the demised premises, and the charge

under consideration (opening the street) was such an assessment. The court held that it could not enter into any equitable consideration when the covenant speaks for itself.

A covenant that the lessees shall pay all rates, taxes and assessments for which the premises shall be liable included not only such charges as may be imposed by laws then in force, but also such as may be authorized by laws afterward enacted. (16 Ruling Case Law, sec. 310.)

When the lease was executed the possibility of changes in the city charter affecting the amount and the time and manner of payment of the annual taxes was not so remote that it could be ignored. If the lessee desired to restrict its obligation to the payment of taxes for the five fiscal years ending January 1, 1914, it should have so stipulated in the lease. Its term extended into the sixth fiscal year, as we have seen, and the lease as written required the lessee to pay annual taxes becoming due and payable in that term.

In *Welch* v. *Phillips* (224 Mass. 267) a lease was made for a term of twenty years from May 1, 1893. The lessee covenanted to pay " All the taxes and water taxes and assessments whatsoever, except betterments, whether in the nature of taxes now in being or not which may be assessed upon or payable for or in respect of the said premises or any part thereof during said term." The lessee paid the taxes assessed as of May 1, 1893, and the taxes assessed for each succeeding year until the last year of the term which ended April 30, 1913, but refused to pay the tax assessed as of April 1, 1913, asserting that he already had paid the taxes for twenty years, and that St. 1909, c. 440, which changed the day of assessment from May 1 to April 1 was not contemplated by the parties when the lease was made. Held, that the lessee must comply with the terms of the express

covenant he had made, although the result was that he had to pay the taxes for twenty-one years under a twenty-year lease, it not being open to this court to modify the lease in accordance with the conjecture as to what agreement the parties would have made had they foreseen the likelihood of a change in the Tax Law.

The cases cited by the respondent do not aid it. In *Ayer* v. *Bonwit* (161 App. Div. 122) the suit was brought to recover for one-third of the taxes for the year 1912. The lease under consideration expired May 1, 1912, and the suit presumably was for that part of the assessed taxes represented by the first four months of the year in which the lease expired. It appeared that the landlord had rented the property from May 1, 1912, and the new tenant had agreed to pay taxes falling due May 1, 1912, and on November 1, 1912. Upon such evidence the plaintiff's claim was dismissed.

In *Morris* v. *Suerken* (88 Misc. Rep. 262) the court held that the taxes did not become due and payable during the term. It also appeared in that case that the new tenant whose lease commenced May 1, 1914, had agreed to pay the annual tax for the year 1914.

In the *Saks* case (*Herald Square Realty Co.* v. *Saks & Co.*, 215 N. Y. 427, 432) the alterations required by the municipal authorities were radical and structural and the court held not within the intention of the parties. This court took occasion in that case to say that "Taxes and assessments are not in the same category with the cost of making substantial changes in a commercial building."

The judgment of the Appellate Division and of the Special Term should be reversed and judgment should be ordered for the plaintiffs for $5,117.50, with interest from June 3, 1914, with costs in all courts.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND and ANDREWS, JJ., concur; McLAUGHLIN, J., not sitting.

Judgment reversed, etc.