PARK BUILDING CO. *v*. GEORGE P. YOST FUR CO.

1. LANDLORD AND TENANT—LEASE—CONSTRUCTION.
   Where a lease is susceptible of more than one construction, that most favorable to the lessee must prevail.[1]

2. PROPERTY—PAST-DUE RENT PERSONALTY.
   Rent past due, *held*, to be personal property.

3. CONTRACTS—CONSTRUCTION—GENERAL WORDS AFTER SPECIFIC.
   Where no intention to the contrary appears, general words used after specific terms are to be confined to things *ejusdem generis* with the things previously specified.

4. TAXATION—FEDERAL INCOME TAX UPON RENTALS NOT A TAX UPON THE PROPERTY.
   Lessor's income tax, as applied to leased property, *held*, not a tax "levied upon said premises," but in its process and assessment a direct personal tax against him.

5. LANDLORD AND TENANT—LEASE—TENANT'S COVENANT TO PAY TAXES DOES NOT INCLUDE LESSOR'S INCOME TAX.
   A lease providing that the lessee should pay all taxes of every nature and kind whatsoever, levied upon said premises, specifying the same in apt and appropriate terms, and further providing that it was the intent to insure to lessor a net rental, but containing no reference whatever to lessor's Federal income tax, construed, and *held*, not to be the intent of the parties that the lessee should pay the lessor's Federal income tax based upon said rental.

Error to Wayne; Tappan (Harvey), J., presiding. Submitted October 16, 1919. (Docket No. 61.) Decided December 22, 1919.

Assumpsit in justice's court by the Park Building Company against the George P. Yost Fur Company for the amount of a Federal income tax paid upon rentals received from defendant. There was judgment for defendant, and plaintiff appealed to the cir-

[1] On construction and effect of covenants in lease, sublease, or assignment of lease as to payment of taxes and assessments, see note in L. R. A. 1915A, 334.

cuit court. Judgment for defendant. Plaintiff brings error. Affirmed.

*Stellwagen, MacKay & Wade*, for appellant.

*Clark, Emmons, Bryant & Klein*, for appellee.

STEERE, J. The facts in this case are undisputed and stipulated. The Park Building Company is, and was for some time before commencement of this action, owner of lot 14 and the north 20 feet of lot 13, section 8, Governor & Judges' plan of the city of Detroit, and had leased said premises to Edward C. Van Husan for a term of 99 years. It was organized as a corporation for the sole purpose of owning and leasing this property and had no other assets or source of income except the rentals therefrom. On the 23d of February, 1916, Van Husan sub-leased the premises to defendant George P. Yost Fur Company for a term of 91 years and 8 months, beginning April 1, 1916, and Van Husan assigned his sub-lease from defendant to the Park Building Company.

The United States government assessed for the year 1916 an income tax against the Park Building Co. upon the income derived from the annual rental paid to it by the defendant lessee of said property, which was paid. But three-fourths of this income tax, amounting to $99.31, is directly involved here as the lease had been in effect but three-quarters of that year, but succeeding annual assessments are necessarily indirectly involved. The case was commenced in justice's court to recover the amount of income tax paid by plaintiff and claimed due from defendant under the lease for 1916, whence it was carried to the circuit court of Wayne county by appeal, and plaintiff now appeals from an adverse decision against it in the circuit court.

The sub-lease of February 23, 1916, from Van Hu-

san to defendant and assigned by him to plaintiff, is
the instrument under consideration. The question in-
volved is whether said lease contemplates, and by fair
construction of its provision requires defendant shall
pay such Federal income taxes as may be assessed
against its landlord upon the rentals received from
it thereunder. The lease provides for a monthly rental
of $1,750 for a portion of its duration and an annual
rental thereafter of $25,800 for the remaining 82
years of the term, at all times payable in advance on
the first day of each month in equal monthly install-
ments. It is an elaborate, carefully drawn instru-
ment, with numerous provisions which need not be de-
tailed, that relating to taxes being the one directly
involved which is as follows:

"Taxes: As a further consideration for the leasing
and demising aforesaid, the said party of the second
part further covenants, promises and agrees to bear,
pay and discharge, in addition to said rent reserved,
all rates, taxes, charges for revenue and otherwise,
assessments and levies, general and special, ordinary
and extraordinary of every name, nature and kind
whatsoever, including water rates, which may be taxed,
charged, assessed, levied or imposed upon said prem-
ises, and upon any and all buildings and improve-
ments thereon and any personal tax levied or assessed
upon said party of the first part, which may be as-
sessed, levied or imposed upon the leasehold estate
hereby created and upon the reversionary estate in
said premises during the term hereby granted and so
long thereafter as said party of the second part, its
successors, representatives and assigns, shall occupy
said demised premises; the intent hereof being to in-
sure to said party of the first part a net rental here-
under, not chargeable with any burdens by way of
taxes, or otherwise, resulting in the diminution of the
same.

"And it is further understood, covenanted and
agreed by and between the parties hereto, that the
said party of the second part shall pay, on execution
of this lease, its *pro rata* share of the city taxes for

1915-1916, and also the State and county taxes for 1915-1916, which may be levied upon said premises. And the party of the second part further covenants and agrees to obtain and deliver to the said party of the first part within thirty (30) days after such taxes shall respectively become due and payable, duplicate tax receipts of all taxes and assessments paid on said premises of every kind and nature whatsoever; and all such taxes and all such receipts shall be paid and made out in the name of the said party of the first part, or his heirs or assigns; and that the said duplicate tax receipts shall be promptly sent by mail to said party of the first part or to such agent or depository as he may designate in writing."

The lease contains a further provision that the party of the first part may at any time during the term of said lease pay any due and unpaid taxes, assessments, water rates or other charges "upon said premises," such payments to be a claim against the lessee as additional rent. Upon construction of the above-quoted sections relative to payment of taxes, plaintiff particularly stresses the provision that the intent is "to insure to said party of the first part a net rental hereunder, not chargeable with any burdens by way of taxes, or otherwise, resulting in the diminution of the same," and urges that in comprehensive explanation of what immediately precedes and follows, this general statement makes plain by fair construction of the tax clause taken in its entirety that the contracting parties to this lease contemplated and agreed the lessee should during the life of the lease pay all income taxes which might be assessed against the lessor on account of rentals received.

It is the contention of defendant that where more than one construction is possible that most favorable to the lessee should prevail, and by fair construction the generalizing words in the tax clause are but explanatory of and confined to such taxes and charges as relate to and may be directly imposed upon the

preceding named estates, free of which the rental shall be net; and does not contemplate by fair intendment any personal income tax which may be imposed upon the lessor after he has received the stipulated net rental from the lessee, free of all taxes, rates, charges, etc., which are assessed, levied or imposed as a burden on the leased premises themselves.    ,

Pertinent to that inquiry it may be noted that at the time the lease was entered into there was a Federal statute providing for an income tax, though not the same as now in force. The lease nowhere makes any direct reference to a personal income tax. The tax section in detail and with apt phraseology takes cognizance of and requires that the lessee shall pay all taxes upon four estates in the property, directly named as follows: "said premises"—"all buildings and improvements thereon" — "the leasehold estate hereby created"—and "the reversionary estate in said premises during the term hereby granted," and the lessor with detailed effort to make certain from the beginning prompt payment by the lessee of the taxes so specified, provided in the second paragraph of the tax clause that the second party should forthwith pay its *pro rata* share, for the balance of that tax year, of the city taxes, and the State and county taxes for 1915-1916, "which may be levied upon said premises." And within 30 days after said taxes become due obtain and deliver to said first party duplicate tax receipts "of all taxes and assessments paid on said premises of every kind and nature," to be paid and made out in the name of the first party, his heirs or assigns, with no suggestion indicating an intent that the tenant should pay any portion of the personal income tax which might be assessed or levied against the lessor for 1916 or later.

In their briefs counsel for the respective parties

agree that upon the precise issue presented no decisions of any Federal court or of this court are to be found directly in point, and but few cases can be found in other States where leases have been so worded as to give rise to litigation over whether the lessee is obligated to pay the lessor's income tax upon the rent which he receives. Counsel cite and discuss at some length three decisions of the Massachusetts supreme court where the question has arisen over the wording of lease covenants of questioned phraseology, none of which are identical with each other or the case at bar, but are urged as more or less analogous and illuminating.

In *Suter* v. *Jordan Marsh Co.*, 225 Mass. 34 (113 N. E. 580), decided September, 1916, the court had under consideration a covenant in a lease by which the lessee agreed to pay "all taxes and assessments whatsoever, except betterment taxes, which may be levied for or in respect of the leased premises, or any part thereof, or upon or in respect of the rent payable hereunder by the lessee, howsoever and to whomsoever assessed." The court held that such covenant required the lessee to pay a United States income tax imposed upon the rent against the lessor, saying:

"The only payment which the United States had a right to exact under the law was a tax at a specified percentage upon the rent reserved for a stated period of time. That exaction is called in the act of congress a 'tax.' It is in its nature a tax. But by the terms of the lease, defendant has obligated itself to pay 'all taxes and assessments  *  *  *  upon or in respect of the rent  *  *  *  howsoever and to whomsoever assessed.'"

In *Codman* v. *American Piano Co.*, 229 Mass. 285 (118 N. E. 344), decided January 14, 1918, that court had before it for consideration a lease containing the following:

"And the lessee further covenants and agrees with the lessor to pay punctually within fourteen (14) days from the times when they become due and payable all taxes and assessments whatsoever which may be payable for or in respect of the leased premises during the term thereof, except assessments for betterments hereinafter arranged for."

Pointing out the distinction that in the *Suter Case* the covenant not only expressly required the lessee to pay the taxes upon the leased premises but also upon or in respect to the rent payable under the lease, the court in an interesting discussion of the subject said in part:

"In other words, the agreement of the parties as expressed in the lease is to govern and control their respective rights in view of the language employed. * * * The legal signification (of the covenant last quoted) clearly is that the taxes are those which relate solely to the premises themselves and not to the rent reserved which, when due, is a separate and independent estate. * * * The words used by the parties cannot fairly be extended by us beyond their natural and ordinary meaning, and therefore the defendant cannot be held liable for taxes which the covenant neither by express words nor reasonable implication obliged him to pay."

In *Kimball* v. *Cotting*, 229 Mass. 541 (118 N. E. 866), decided February 28, 1918, the question again arose over the covenant in a lease providing:

"The lessees covenant and agree to pay and discharge any taxes or excises which during the term may on any assessment day be lawfully levied or assessed to either the lessors or the lessees upon or against the rent payable hereunder for or in respect of the period between such assessment day and the last prior assessment day, or for or in respect of the period between the first of such assessment days and one calendar year prior thereto, whether levied or assessed upon the same as rental or income, but not for any other taxes or excises in respect thereof."

Analyzing this covenant the court points out that it relates exclusively to the payment of taxes levied upon the rent reserved by the lease whether levied against the lessors or the lessees, making no difference within the scope of the covenant whether the burden is imposed by law upon the one or the other. Referring to the expression "any assessment day," the court notes it as manifest from the words following in the covenant that it was the intent of the parties to impose the obligation upon the lessees whether the tax was levied as a property or an income tax, and it being provided by express words that the lessees should be liable for the tax levied upon the rent "whether as rental or as income," finds it clearly the intent of the parties that the words "assessment day" did not refer immutably to a single date "but were designed to include whatever period, not exceeding that elapsing between two successive assessment days, might be established by any tax law thereafter enacted as the measurement of the income." And concludes that there being no express limitation to the one or the other by words of the covenant it was plainly the intent of the parties to include both State and Federal taxes. Referring to the two preceding cases upon the subject the court said that the instant case though not governed by the *Suter Case* was of similar import, but readily distinguishable from the *Codman Case*.

It is scarcely necessary to note that back of the question of interpretation or construction of the disputed tax clause in the lease no restraining Federal or State laws are involved. While as between the government and the lessor he alone was held accountable for and obliged to pay his income tax from whatever source derived, as between themselves the contracting parties were at liberty to agree as positively and in as direct terms as they saw fit to adopt that the

lessee should pay all or any particular part of the
Federal income tax of the lessor, his heirs or as-
signs, throughout the generations it was provided this
lease should run. If that was what the contracting
parties had in mind and agreed it must be conceded,
as defendant contends, that the phraseology adopted
was not the most appropriate vehicle of thought to
express such agreement, which by a few simple and
direct words could have been made plain and certain
beyond any peradventure. But aside from that re-
flection and however unhappy the wording for the
purpose, the inquiry here is whether by reasonable
construction such is its legal import, fairly disclosing
that the minds of the parties met upon that proposition.

It is undisputed that the question involved turns on
construction of the concluding sentence in the first
paragraph of the tax clause, relative to net rental.
Deferring to the combined contentions of counsel for
the respective parties it would seem to be susceptible
of more than one construction, which, however, each is
inclined to deny. Clearly it does not impose upon the
lessee in any direct language payment of all taxes
levied upon or *in respect to the rent* howsoever or to
whomsoever assessed, as in the *Suter Case,* nor those
levied and assessed *upon rent payable,* whether as
rental or *income,* as in the *Kimball Case.* Neither does
it in like direct and express terms confine the lessee's
burden to taxes payable for or in respect of *the leased
premises,* as in the *Codman Case.* Defendant con-
tends such is the manifest meaning of the tax clause
as a whole and it should be so construed, while plain-
tiff argues to the contrary.

We do not think it can be said with certainty that
the meaning of the language in controversy is abso-
lutely without ambiguity or the intent so aptly ex-
pressed as to be beyond doubt and forbid construction.
It is a recognized rule of construction that where more

than one meaning is permissible that most favorable to the lessee must prevail; *Pere Marquette R. Co.* v. *Wabash R. Co.,* 141 Mich. 215. Rent past due has been held to be personal property; *Burden* v. *Thayer,* 3 Metc. (Mass.) 76, and certainly is such after paid to the lessor. Under the lease in question it was payable monthly in advance. Nowhere in the lease is any mention made, by name or synonym, of any income or other personal tax to be paid by either party. The income tax imposed on the landlord is not computed or assessed against him until the end of each year, upon the actual income he received during that year. The stipulated rent for that year, payable monthly in advance by the terms of the lease, would have all reached his hands and become his money, a then net rental to him free from all taxes and charges assessed or levied against the premises leased. What plaintiff proposes and contends for is to include by construction of the general provision under consideration a subject not included in it by name or directly indicating expression.

Were those words unqualified by anything in the lease which preceded or followed them the omnibus language used might more readily yield to plaintiff's interpretation. But it is a long settled rule of construction, which had become a legal maxim even before the days of Broom, that words of specification draw into the same class any general terms or words presumably super-added to attain the end without further prolixity. In this tax clause the conveyancer was liberally prolix in details and words of specification relative to the kinds of taxes the lessee must pay and upon what imposed, immediately preceding the general terms with which the last sentence in the paragraph concluded; and in a second paragraph, as it were an afterthought, the subject is again treated in added detail with words of specification further defin-

ing the lessee's obligations to pay taxes "upon said premises." This rule, though perhaps most frequently found in cases involving construction of statutes, is of general application. In *Brooks* v. *Cook*, 44 Mich. 617, Justice COOLEY thus defines it:

"But it is a sensible and well understood rule of construction that when after an enumeration, the statute employs some general term to embrace other cases, the other cases must be understood to be cases of the same general character, sort or kind with those named."

The case of *Hawkins* v. *Railroad Co.*, 17 Mich. 57, which involved the construction of a contract, is there cited. Justice CAMPBELL, writing the opinion in the *Hawkins Case*, said:

"The rule is usually applicable, that where no intention to the contrary appears, general words used after specific terms are to be confined to things *ejusdem generis* with the things previously specified."

Counsel for plaintiff contend the intention of the parties that the concluding words of the paragraph should not be qualified by what went before, and they should be regarded as "a new, separate and distinct idea," is made evident by the fact that a semicolon is inserted between what precedes and the general concluding clause. While not prepared to discuss the subtle principles of punctuation to any degree of nicety, we note it stated in the Century dictionary that the semicolon, mentioned as "a Latin delicacy which the obtuse English typographer resisted," is a punctuation point "used to mark the division of a sentence somewhat more independent than that marked by a comma," and it may be stated as a matter of common knowledge that the full stop or end of a completed sentence is marked in printing or writing by a period. Whatever distinction there may be between a comma and a semicolon, it remains that the concluding words

in question are a part of the lengthy specifying sentence preceding them.

Plaintiff further contends that even if we accept the narrow and strained construction defendant urges, limiting the general language to meaning rentals should not be diminished by any kind of tax assessed upon the premises, nevertheless a tax upon rent payable is a direct tax, and in effect a tax upon the premises from which the rent is derived; and if, as must be conceded, the lessee is holden for all taxes on the leased premises he is necessarily required to pay the income tax on the rent payable. In support of this proposition counsel cite and argue from the somewhat celebrated case of *Pollock* v. *Trust Co.*, 157 U. S. 429 (15 Sup. Ct. Rep. 673), reported on rehearing in 158 U. S. 601 (15 Sup. Ct. Rep. 912), in which the Federal income tax of 1894 was held unconstitutional by a bare majority of the court. The reported case with its rehearing, consisting of some 340 printed pages, is an extremely interesting and instructive promulgation of legal thought, learning and debate, in which however the justices who sat in the case were scarcely more successful in agreeing among themselves than were the attorneys who argued it. It is there said in the majority opinion:

"An annual tax upon the annual value or annual user of real estate appears to us the same in substance as an annual tax on the real estate, which would be paid out of the rent or income."

This was said in a lengthy discussion of whether an income tax on rentals was a direct tax within the meaning of the Federal Constitution and therefore invalid because not levied in accordance with the constitutional rule of apportionment. On the rehearing it was said of this holding:

"The question thus limited was whether such taxation was direct or not, in the meaning of the Consti-

tution, * * * that a tax upon the realty and a tax upon the receipts therefrom were alike direct."

We are not impressed that these views, limited in application to the constitutionality of the income tax apportionment, are of controlling significance here. The court was only considering the distinction between direct and indirect taxes in its relation to the case decided without reference to its bearing upon, or application to, other and different cases. Whether direct or indirect, the lessor's income tax as applied to this leased property is not a tax "levied upon said premises," or on any of the four estates named in the lease, but is in its process of levy and assessment a direct personal tax against him, inseparable from him and his annual income, beginning and ending with him. The *Pollock Case* was cited and unsuccessfully insisted upon as controlling in the *Codman Case*. The court there aptly offered the postulate that:

"In construing the covenant it is plain that taxation upon real estate means one thing, and taxation upon income means another."

Without extending this opinion to further review that case, it may be said we regard its discussion of the question persuasive and well in point here.

The tone and tenor of this contract throughout is directed with careful description to the leased premises, the taxes thereon and rental therefor which the lessee must pay during the long life of the lease extending into succeeding generations. To that end and extent the intent of the parties is made plain to a certainty by clear expression with appropriate names and descriptive terms, which by recognized rule of construction limit general words and terms superadded to the same general character or kind as the things previously specified. They contain no suggestion that in addition to all taxes on the premises and

nominated rent the lessee must also pay his landlord's personal income tax, a matter of greater moment and easier description than certain of the requirements clearly and distinctly specified. It is not an unreasonable presumption that had the contracting parties had in mind, agreed upon, or intended to impose payment of the landlord's income tax on the lessee, they would have expressed the intent in equally clear and positive language with appropriate descriptive terms, which they could readily have done without multiplying words.

In the reflected light of the matters dealt with in detail with descriptive terms and the context surrounding the generalizing language under consideration, we are constrained to agree with the following conclusion of the trial court:

"In addition to the foregoing, it is also my conclusion that it cannot be held that the minds of the contracting parties met upon the proposition that the lessee should pay the landlord's income tax."

The judgment is affirmed.

BIRD, C. J., and SHARPE, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.