## BELLE L. MARBLE v. OLIVER IRON MINING COMPANY AND ANOTHER.[1]

July 22, 1927.

No. 26,123.

**Incidence of 1923 royalty tax.**

1. The royalty tax, L. 1923, c. 226, is imposed upon the right, title and interest of the lessor in ore lands let for the purpose of mining the ore for a royalty.

**When lessee in mining lease must pay the tax.**

2. And where the lessee in such lease has covenanted to pay all taxes and assessments, ordinary and extraordinary, general and specific, upon the demised land, he must pay the royalty tax.

Constitutional Law, 12 C. J. p. 788 n. 1.
Mines and Minerals, 40 C. J. p. 1016 n. 74.
Taxation, 37 Cyc. p. 752 n. 8; p. 776 n. 74 New; p. 790 n. 68; p. 1233 n. 67; p. 1241 n. 43.

Plaintiff appealed from an order of the district court for St. Louis county, Kenny, J., sustaining a demurrer to the complaint. Reversed.

*Baldwin, Baldwin, Holmes & Mayall,* for appellant.

*Frank D. Adams, Elmer F. Blu, Cleon Headley, George W. Morgan,* and *Davis, Severance & Morgan,* for respondents.

[1]Reported in 215 N. W. 71.

*J. L. Washburn, J. W. Hunt, Snyder, Gale & Richards, Archibald Broomfield,* and *Beaumont, Smith & Harris* filed briefs as amici curiae in support of appellant.

*Horace Andrews* filed a brief as amicus curiae in support of respondents.

HOLT, J.

The action is to recover of the defendant, the lessee of ore lands, the royalty tax paid by plaintiff, the lessor. The court sustained a demurrer to the complaint and plaintiff appeals.

Recovery is based upon this covenant in the lease: "The lessee further covenants to pay all taxes and assessments, ordinary and extraordinary, general and specific, including the same for 1905, which may be levied or assessed upon the said lands and the whole thereof hereby demised and on the iron ore mined thereon, and on all improvements and all personal property thereon while this lease shall remain in force, and to furnish the lessors with duplicate tax receipts showing the payment of all such assessments or taxes." The lease was made in 1905, running for 50 years, and covering iron ore lands in Itasca county. The lessee has the option to terminate the lease at any time upon giving notice for a prescribed period. The royalty stipulated was 25 cents per ton of marketable ore mined, with a provision for a minimum yearly royalty.

Defendant contends the tax is not a tax upon lands; at most, it reaches only an incorporeal hereditament. State v. Royal Min. Assn. 132 Minn. 232, 156 N. W. 128, Ann. Cas. 1918A, '145. It is also claimed to be a personal tax of the lessor of ore lands, enforceable against him personally by aid of a lien provision upon his reversionary interest in such lands. It is true that L. 1923, p. 258, c. 226, at first blush appears to impose the tax upon the lessor personally, but if so construed difficulties constitutional and practical at once arise. If an act of the legislature is reasonably susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, the court should adopt the former. Stewart v. G. N. Ry. Co. 65 Minn. 515, 68 N. W. 208, 33 L. R. A. 427;

Bender v. City of Fergus Falls, 115 Minn. 66, 131 N. W. 849; State ex rel. Hildebrandt v. Fitzgerald, 117 Minn. 192, 134 N. W. 728; Alexander v. McInnis, 129 Minn. 165, 151 N. W. 899. When the statute involved deals with large public revenues, it is peculiarly important that the rule stated be heeded. We conclude the royalty tax to be a tax on the right, title and interest in ore lands of the owner thereof who has granted another the right to mine the ore for a stipulated consideration, payable at certain times during a period of years. The procedure provided for the enforcement of the tax so indicates, for the judgment prescribed reaches only the right, title and interest of the lessor in the demised land and not other property or him personally. The rule is that the procedure given for the imposition and enforcement of a tax is exclusive. City of Faribault v. Misener, 20 Minn. 347 (396); 37 Cyc. p. 1233. The tax being against a specified interest or estate in land is enforced in rem. McQuade v. Jaffray, 47 Minn. 326, 50 N. W. 233.

The expression in County·of Redwood v. Winona & St. P. L. Co. 40 Minn. 512, 42 N. W. 473, to the effect that the nature of the right sought to be enforced and not the mode of procedure is the test, was used with reference to the applicability of the statute of limitations to omitted real estate taxes as well as to omitted personal property taxes; so also the statement in the opinion, that in the absence of any method in the law for the enforcement of a tax against a property owner recourse may be had to a personal action, has no application where, as here, the mode of enforcement is prescribed.

As an additional argument that the royalty tax is against a substantial interest of the lessor in the land demised for mining, it is suggested that a judgment docketed against the lessor would undoubtedly become a lien upon his estate in the land reaching the unaccrued royalty under the lease, even if he had conveyed the fee reserving the royalty.

But the subject need not be pursued further, for L. 1923, p. 258, c. 226, has been considered by the highest court of the land in Lake Superior Con. Iron Mines v. Lord, 271 U. S. 577, 46 S. Ct. 627, 70

L. ed. 1093, and was construed "as laying a tax upon interests in mineral lands from which permission has been given to extract ores upon payment of royalty. The amount of the exaction is determined by reference to the sum actually received for the use of such interests. As the tax is laid upon land, neither the owner's residence nor the place fixed for payment of the royalty is important." The placing of ore lands which are being mined in a class by themselves for taxing purposes was also held violative of no constitutional provision. We can do no better than adopt the construction thus placed on this law by the Supreme Court of the United States. Vigorous efforts by eminent counsel to have that court construe the tax other than a tax on interests in land failed. It is obvious, therefore, that there is now no need to consider the oft referred to cases in the many briefs of counsel which deal in various forms with rent, or income from land, for taxation purposes, under statutes more or less different from the one here in question. These cases are: Pollock v. Farmers L. & T. Co. 157 U. S. 429, 15 S. Ct. 673, 39 L. ed. 759, and 158 U. S. 601, 15 S. Ct. 912, 39 L. ed. 1108; Young v. Illinois Athletic Club, 310 Ill. 75, 141 N. E. 369, 30 A. L. R. 985; Des Moines Un. Ry. Co. v. C. G. W. Ry. Co. 188 Iowa, 1019, 177 N. W. 90, 9 A. L. R. 1557; Park Bldg. Co. v. George P. Yost Fur Co. 208 Mich. 349, 175 N. W. 431; Woodruff v. Oswego Starch Factory, 177 N. Y. 23, 68 N. E. 994; Brainard v. New York Cent. Ry. Co. 242 N. Y. 125, 151 N. E. 152, 45 A. L. R. 751; Catawissa R. Co. v. Philadelphia & Reading Ry. Co. 255 Pa. 269, 99 A. 807, and others cited and discussed therein.

With a determination that the royalty tax is an imposition upon the lessor's right, title and interest in the lands demised, the question remains whether the covenant above quoted requires the tenant to pay the tax. In the absence of the covenant the tax would, no doubt, have to be paid by the lessor to protect his title to the land. The intent of the lawmakers was to lay the burden of this tax upon the interest and estate of the one who granted the permission to mine. And there is plausibility in the contention of one of the respondents, that in construing covenants in leases the language con-

ferring a benefit upon one of the parties thereto should be construed strictly against him on the assumption that, it being in his favor, he dictated or insisted on the language in which the covenant was framed. And authorities generally construe covenants in leases most strongly against the lessor, if there be any doubt or uncertainty about the meaning. Swank v. St. Paul City Ry. Co. 72 Minn. 380, 75 N. W. 594; Niles Land Co. v. Chemung Iron Co. (C. C. A.) 234 F. 294. In Park Bldg. Co. v. George P. Yost Fur Co. 208 Mich. 349, 357, 175 N. W. 431, it is said:

"It is a recognized rule of construction that where more than one meaning is permissible that most favorable to the lessee must prevail."

There may be some doubt whether the reasons which gave rise to the rule exist so as to make it applicable to modern mining leases, involving great financial interests of many years' duration, and bearing inherent evidence that both parties have carefully and, no doubt, with adequate legal aid considered every covenant and stipulation. Be that as it may, all are agreed that the true meaning of an instrument like a lease is not to be gathered from some isolated phrase or sentence, but that such phrase or sentence must be considered in connection with the whole writing; that the language used should be interpreted in view of the surrounding circumstances, the situation of the parties, and the object or purpose of the agreement. Mining leases, as a rule, cover a long term of years. They aim at the exhaustion of the ore, the real value of the land. When that has been accomplished the premises are left in a shape utterly unfit for the ordinary uses of land. The situation of the parties at the time of this letting was that both contemplated that the mining would wholly deplete the ore; that the only return to the lessor for the supposed great value of the land because of the mineral deposit therein would be the royalty; that the lessee would assume all the burdens and expenses connected with the mining and realize all the profits which improved methods in mining and advance in price of the product might give over and above

the royalty and taxes. For the lessee the undertaking was a great speculation. As part of the agreement this covenant that the lessee should pay all taxes upon the demised land and the whole thereof was inserted.

When this was done both parties must be held to have known of the almost boundless power of the state to tax, and for that purpose to classify property, to lay taxes upon separate interests in real property, and to extend the field of taxation. The fact that this tax did not exist when the lease was made or that neither party foresaw the precise tax that was afterwards devised can have no bearing. Walker v. Whittemore, 112 Mass. 187; Post v. Kearney, 2 N. Y. 394, 51 Am. D. 303; Ward v. Union Trust Co. 224 N. Y. 73, 120 N. E. 81, 3 A. L. R. 1154; J. W. Perry Co. v. City of Norfolk, 220 U. S. 472, 31 S. Ct. 465, 55 L. ed. 548. In Bleecker v. Ballou, 3 Wend. 263, cited with approval in Walker v. Whittemore, 112 Mass. 187, and Ward v. Union Trust Co. 224 N. Y. 73, 120 N. E. 81, 3 A. L. R. 1154, this language, applicable to the case at bar, is used with reference to a covenant of the tenant to pay all taxes, charges, and impositions which should be taxed, charged, imposed or assessed upon the demised premises:

"Had there been no decisions of courts upon similar covenants, I should think it clear that the parties intended precisely what the language of their contract imports; that the lessee ran the risk of *all* taxes, charges and impositions. * * * They import that the landlord was to receive his rent, * * * was to be subject to no expense on account of the demised premises."

People well understand that legislatures are on the lookout for property and business to bear the ever increasing demands for public revenue. Property is constantly being classified so that justly heavier burdens may be laid upon classes most able to bear them. Interests or estates in lands may be segregated and taxed separately. G. S. 1923, §§ 1978 and 1993. Washburn v. Gregory Co. 125 Minn. 491, 147 N. W. 706, L. R. A. 1916D, 304. Ore lands and the business or occupation of mining the ore have been sepa-

rated. L. 1923, p. 258, c. 226, is complementary to L. 1921, p. 274, c. 223, the two being intended to reach and tax the mining operation as an industry or occupation, and the interest in the land of the owner or lessor where he has granted permission to extract and deplete the ore deposit for a royalty or consideration. Besides this there is the law for the taxation of ore lands on the ad valorem basis having regard for the ore not mined, as well as of the surface of the ground.

The contention is made for the lessee that the phrase "demised land" means the estate of the lessee, and that after the lease is made the only interest or estate which the lessor retains is the right to the royalty which is not a substantial interest or estate in realty. We do not think the meaning claimed for the phrase or term is permissible either in law or fact. The terms "demised land" or "land hereby demised" merely refer to the governmental description of the premises leased and do not characterize the estate granted. Where the fee or estate of inheritance was in the lessor at the time he executed the lease it remains in him and the estate or interest the lessee obtains is a chattel real only. Penney v. Lynn, 58 Minn. 371, 59 N. W. 1043, G. S. 1923, §§ 8033 and 8036. We think, therefore, that even with the rules of construction above referred to favoring the lessee it is impossible to construe the covenant to pay taxes on the land demised as limited to the chattel real, the only interest of the lessee, nor even as limited to the ad valorem tax, which concededly the lessee must pay; but its broad and sweeping terms to pay all taxes and assessments, ordinary and extraordinary, general and specific, which may be levied or assessed upon the said lands and the whole thereof hereby demised and on the ore mined thereon while the lease remains in force, must be construed to include the royalty tax, nonpayment of which would result in the loss to the lessor of all his right, title and interest in the premises. The covenant is clear, and while the royalty tax was not in the minds of the parties when the lease was made it is a tax duly imposed by public authority upon the lessor's estate in the

demised premises which the tenant assumed to pay. Theo. Hamm Brg. Co. v. N. W. Trust Co. 135 Minn. 314, 160 N. W. 792.

The learned trial court was influenced by a desire to avoid double taxation, and construed the decision in the Lord case [271 U. S. 577, 46 S. Ct. 627, 70 L. ed. 1093] as limiting the royalty tax to the interest or estate retained or enjoyed by the lessor after the right to mine is granted the lessee. But as stated above, the only interest or estate granted the lessee in the land demised is a chattel real; hence where the lessor was owner in fee when he executed the lease he remains such thereafter subject only to the chattel real interest outstanding in the lessee. We do not think the question of double taxation is involved. The royalty tax is a special and extraordinary tax upon the lessor's estate in the land where the lessee conducts mining. While double taxation is undesirable there is nothing in the federal constitution prohibiting it. Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. ed. 445. However, whatever be the title of the lessor, so long as he retains the right to the royalties with right of re-entry for breach of conditions in the lease, he has such right, title and interest in the land that the royalty tax attaches thereto, and under a covenant like the one in question the tenant agreed to discharge it.

The royalty tax being an imposition upon the lessor's interest in land demised for ore mining, payment of that tax falls upon the lessee under the plain and unambiguous language of the covenant in the lease. Rules of construction urged upon the court may not override or destroy the terms of a contract which are clear and free from doubt. But even giving rules of construction full consideration, we are of opinion that it still must be held that since the royalty tax is laid upon an estate or interest in land the lessee's covenant obligates him to pay it.

Order reversed.