. ELIHU SMITH *vs.* JAMES M. LYTLE and another.

September 24, 1880.

**Sale of Land on Execution against a Purchaser having only an Equitable Interest.**—A sale on execution of an estate in fee in real property, where the judgment debtor has only an equitable interest therein, under a contract of purchase, and such interest only is authorized and directed to be sold by the process, is void as against the vendor in the contract, or his grantee, who holds the legal title, and has a prior lien upon the property for the unpaid purchase-money.

Plaintiff brought this action in the district court for Nobles county, praying that a sheriff's certificate of sale, executed and delivered to defendant Lytle, of certain real estate in that county, and also a deed of the same real estate from Lytle to the other defendant, Thompson, be adjudged void and cancelled. The defendants answered, and the action was tried before *Dickinson,* J., whose findings of fact and conclusions of law were in substance as follows:

· The land in question is a village lot in Worthington with a dwelling-house thereon, the *property being worth* $1,500. In August, 1873, one Lackor entered into a written contract with the Sioux City & St. Paul Railroad Co., which then owned the lot, for the purchase of it. The lot was then vacant. Lackor paid part only of the purchase-money, went into possession, built the dwelling-house now standing on the lot, and in February, 1874, moved into the house with his family, and thereafter occupied it as his homestead.

In April, 1874, the plaintiff, Smith, lent Lackor a large sum of money, and, as security for its repayment, took from him an assignment in writing of his contract with the railroad company. Lackor's wife did not join in the assignment. On December 16, 1874, plaintiff, to protect his rights under the assignment, paid to the railroad company the unpaid balance of the purchase-money of the land required by the contract to be paid by Lackor, amounting to $142, and thereupon the company executed and delivered to plaintiff a

deed of conveyance of the land. In August, 1875, plaintiff brought suit against Lackor to foreclose his interest in the property, and to enforce the security. Issue was joined, and the action tried by the court, and judgment ordered for the recovery by Smith from Lackor of $1,454.13, including the $142 paid by Smith to the railroad company, with interest and costs; and that as to this sum of $142, with interest and costs, the judgment be a specific lien on the property, "and that the same be sold in accordance with the statute in such case made and provided, to satisfy such lien; and that defendant Lackor be decreed to be the equitable owner of the said premises, discharged of any lien or title in favor of the plaintiff on account of such assignment, except as to the said sum of $142 and interest and costs; and that, upon satisfaction of such lien, either by payment or upon sale of the premises and redemption therefrom, the plaintiff be adjudged to reconvey the said premises to defendant Lackor, by proper deed of conveyance." See *Smith* v. *Lackor*, 25 Minn. 454.

On June 5, 1876, pursuant to this order, judgment was entered, directing that the premises "be sold in accordance with the statute in such case made and provided, to satisfy such lien," without specifying more particularly the manner in which it should be enforced or executed. The amount of the lien with interest and costs was $173.74. The judgment was docketed as an ordinary judgment for the recovery of the entire amount adjudged to Smith in the action, and on June 6, 1876, execution was taken out, in the ordinary form, except that it referred to the judgment as a judgment "for the sum of $173.74, adjudged to be a specific lien upon lot 6, in block 34, in the village of Worthington, in said county and state, and that the same be sold to satisfy such lien." In other respects the execution was in the form prescribed by Gen. St. 1878, *c.* 66, § 295, subd. 1. It recited that $173.74 was due on the judgment, and directed the sheriff to satisfy the same in the manner provided in the section and subdivision referred to. On the same day, by virtue of the execution,

the sheriff levied on the property in question, and, after due notice, sold it at public auction to the plaintiff, Smith, for $201.54, and returned the execution fully satisfied. No report of the sale was made to the court, nor confirmation by the court sought. The ordinary sheriff's certificate of sale on execution was made and delivered to Smith, and recorded. No redemption was ever made from the sale. On January 4, 1877, Lackor and wife, for a valuable consideration, executed and delivered to Smith a deed of conveyance (without covenants) of all their right, title and interest, claim or demand, in and to the land.

The defendant Lytle, having become entitled to a mechanic's lien against Lackor, for labor in building the dwelling-house on the lot between August 11, 1873, and December 17, 1873, amounting to $146.80, and having filed the proper account in the registry of deeds, brought suit in May, 1875, to enforce such lien, making Lackor, Smith (the now plaintiff) and one Sheldon parties defendant, all of whom made default. On September 18, 1875, the court, on the evidence taken and reported to it, found the above facts entitling Lytle to a lien, and further found that Lackor was not the owner in fee of the land upon which the dwelling-house stood, but that he held a contract for the purchase of it, by the terms of which the land was to be conveyed to him on payment of the purchase price, a part only of which had then been paid by him. The court also found that Lytle was entitled to recover from Lackor the sum of $146.80, with interest from December 17, 1873, and that judgment should be entered therefor, "and the same be decreed to be a specific charge and lien upon the said dwelling-house standing upon said lot, and upon all the right, title and interest of the said Lackor in and to the said lot of land upon which the same is situated; and that execution be issued upon such judgment, and thereupon the said property upon which such judgment shall be declared to be a lien shall be sold or leased as provided by law, to satisfy such judgment." In accordance with the findings and order, judg-

ment was entered on September 23, 1875, adjudging a recovery of $146.80, with interest, etc., and that the same be "a specific charge and lien upon the said building, dwellinghouse, situated on said land, and upon all the right, title and interest of the said Lackor in and to the said lot of land upon which the same is situated; and that said lien shall remain and be enforced by sale or lease of said premises, dwellinghouse and appurtenances, by virtue of an execution therefor or therein."

This judgment having been docketed, an execution thereon was issued, in the ordinary form of executions against property prescribed in Gen. St. 1878, *c.* 66, § 295, subd. 1, except that, after the command to the officer to satisfy such judgment, etc., out of the personal property, etc., and, if sufficient personal property could not be found, then out of the real property belonging to said judgment debtor, there was added, "or out of the property on which said judgment was adjudged and declared to be a lien." Lytle's attorney, by indorsement on the execution, directed the sheriff to "levy upon the dwelling-house and appurtenances upon said lot, and all the right, title, and interest of said H. L. Lackor in and to said lot of land." The sheriff, by virtue of the execution, levied on the lot of land and the dwelling-house thereon, and, after due notice, sold the whole property at public auction on November 17, 1875, to Lytle, for the sum of $225.50, and executed and delivered to him the usual sheriff's certificate of sale on execution, which was recorded. No redemption was made from this sale by any one.

Lackor was desirous that the property should be sold rather than leased by the sheriff, in order that he might retain possession during the year for redemption, but the sale was made, not because Lackor desired it, but voluntarily by those acting for Lytle under the judgment.

After this sale to Lytle and before the expiration of the time for redemption, the plaintiff, Smith, negotiated with Lytle for a purchase of Lytle's interest acquired under the

sale, intending to procure an assignment of such interest, or, if he failed in that, to redeem from the sale. Before he acquired such interest, the negotiations were interrupted by the expiration of the time for redemption. Smith, for his guidance in respect to the matter of redemption, made inquiry of the clerk of the court, who had acted as Lytle's attorney in foreclosing the mechanic's lien, as to the time when the right to redeem would expire, who, by mistake, misinformed him, so that the time for redemption expired before Smith was aware of the true date of its expiration. In this way he failed to made redemption.

After the time for redemption had expired, the defendant Thompson purposing to buy from Lytle, Smith requested him to forbear for a certain time from negotiating with Lytle, to enable Smith himself to buy from Lytle, and thus protect his own lien on the property, with which request Thompson complied. Thompson had the same knowledge Smith had of all the facts affecting the title. Smith did not assert any title in himself superior to Lytle's, nor did he question the validity of Lytle's title, but supposed that Lytle had acquired a title which extinguished his own interest, and so spoke of it in his conversation with Thompson; but his statements to Thompson were not intended by him as an act of relinquishment of any claim on his part, nor were they so understood by Thompson. Smith, failing to effect a purchase within the time agreed, was informed by Thompson that unless he effected a purchase within a further time named, Thompson himself would purchase. Smith failed to do so within such time, and afterwards, and on December 13, 1876, Thompson purchased the premises from Lytle for $600, besides some taxes assumed, and paid by Thompson, and received from Lytle a warranty deed with the usual covenants. Thompson paid $300 down, and afterwards paid $225, of the purchase price. After Thompson's purchase, Smith attempted to repurchase from him.

On November 24, 1876, after the time for redemption from

the sale to Lytle had expired, Smith brought suit against Lytle for specific performance of an alleged contract for the assignment to him by Lytle of the sheriff's certificate given to Lytle, and of all the latter's right, title, interest, claim and demand in or to the property. Lytle joined issue, and Thompson, after his purchase, was allowed to and did intervene. The action was dismissed, after a trial, the court finding that there had been a mutual mistake of fact by the contracting parties which avoided the agreement. Judgment of dismissal was entered on October 30, 1877.

Among other conclusions of law, the court found that the sale to Lytle under execution, though irregular, was merely irregular and voidable, and was not void; and that plaintiff, having taken no steps to impeach its validity until more than a year after the sale, when the purchaser's title became absolute, though he had actual notice of the sale and negotiated with the persons holding under it for a purchase from them, should be deemed to have waived the defects in the sale, and ought not now to be heard to question the title thus derived, especially after a transfer of the title to a purchaser for a valuable consideration. Judgment was accordingly ordered and entered, dismissing the complaint, and the plaintiff appealed.

*Gordon E. Cole, M. J. Severance* and *Emory Clark*, for appellant.

*Daniel Rohrer*, for respondents.

CORNELL, J. In paying to the railroad company the unpaid portion of the purchase-money coming to it upon its contract of sale to Lackor, and taking a transfer of the legal title, Smith did not make the advance for or on account of Lackor, or in the way of a loan to him. It was not done in pursuance of any agreement between him and Lackor, and the assignment of the contract of purchase from Lackor to him contained no stipulation obligating him to make the advance or to procure the title. He did it voluntarily and solely for the purpose of protecting an equitable interest in

the property which he supposed he had acquired from Lackor, and was holding as security for a loan of money made to him. He was placed by the transaction, therefore, in precisely the position he would have occupied if he had never had any dealings whatever with Lackor, but had bought of the railroad company all its estate and interest in the property, and had taken a conveyance of the legal title to the lot, subject to the equitable rights of Lackor under his contract of purchase from the company.

He has succeeded to all the legal and equitable rights of the company under its contract of sale to Lackor, and has become subject to all its obligations. These rights and obligations are those existing between a vendor and vendee of real property, where a portion of the purchase-money remains unpaid, and the legal title is being withheld until full payment is made. Lackor, as the vendee, became the equitable owner of the lot, and a trustee for Smith as to the unpaid portion of the purchase-money; while the latter, as vendor, held the legal title as a trustee for Lackor, with a prior lien upon the lot for the unpaid purchase-money, as against the vendee and all parties claiming under him. 1 Story's Eq. Jur. § 506; 2 Story's Eq. Jur. §§ 789, 790, 1216, 1217, *et seq.* Plaintiff's lien, therefore, under his judgment against Lackor, to the extent of said unpaid purchase-money, interest and costs, was prior and paramount, and not subordinate, to that which was subsequently obtained by Lytle against the equitable interest and estate of Lackor in the premises, and it could not be affected by any proceedings taken to enforce payment of the latter; for it is too plain for argument that a second lien, which is only a charge upon an equitable title and estate, cannot be used or made available to cut off or destroy a prior lien, which is a charge upon the land itself, affecting both the legal and equitable title.

The judgment under which defendants claim title does not purport to impeach the validity of plaintiff's prior lien, nor to determine any question of priority between it and the me-

chanic's lien which was asserted in that action by Lytle. It only determined the rights of Lytle, under his alleged claim of lien, as against Lackor, on account of the erection of the dwelling-house upon the said lot; the only title to which, that belonged to him, according to the findings in pursuance of which the judgment was rendered, was the equitable one of a vendee, under a contract of purchase, the purchase-money being still in part unpaid; and it adjudged the amount of the lien, by it determined, to be "a specific charge and lien upon said building, and upon all the right, title, and interest of Lackor in and to the land on which it was situated." This subjected to the lien of the judgment whatever equitable rights and interest Lackor had in the premises, but nothing more. It did not reach the fee of the land, nor any prior lien thereon belonging to Smith; and, upon the findings, that could not properly have been done, as it would in effect have been subjecting to the payment of Lackor's debt the property of Smith, without his consent.

The circumstance that Smith was nominally a party defendant in the action is of no importance; for, as no rights of his, as a prior lien-holder or otherwise, were in any way involved or brought in question, it is evident that he was improperly made a party, and that any adjudication affecting his rights would have been error. *Forrer* v. *Kloke*, 10 Neb. 373. But, as already stated, no adjudication of the kind was attempted, and no rights of plaintiff were sought to be passed upon or determined in that action. He stands, therefore, in respect to all subsequent proceedings that have been taken to enforce the judgment, in the same position he would occupy if he had never been made a party defendant; and he may impeach their validity within the same time, in like manner, and upon like grounds as would be permitted to any stranger to the judgment, whose property rights were injuriously affected thereby.

The sale of the lot to Lytle on the execution issued upon his judgment was wholly unauthorized and void, aside from

any considerations growing out of the provisions of the statute regulating the manner of enforcing mechanics' liens when buildings are erected for parties on land to which they have no legal title. The mandate of the process under which the officer here acted in making the sale, required him to satisfy the judgment out of the personal or real property of the judgment debtor, or "out of the property on which the judgment was adjudged and declared to be a lien;" and the direction endorsed upon the writ was "to levy upon the dwelling-house upon the lot, and all the right, title, and interest of the said H. L. Lackor in and to said lot of land." In assuming to sell the lot itself, and to pass the legal title thereto to the purchaser, the officer acted wholly outside the authority of his writ, and his acts were not merely irregular, but void. Herman on Executions, § 255, and cases there cited; *Harris v. Murray,* 28 N. Y. 574; *Jeffries* v. *Sherburn,* 21 Ind. 112.

It is suggested, however, that as Lackor consented to the sale of the lot on the execution, he cannot now be heard to question its validity as against Thompson, who has since purchased the property of Lytle and paid a valuable consideration therefor; and that Smith occupies the same position, because he is a grantee of Lackor under the deed of January, 1877. It is also urged that he has waived all defects and irregularities in the sheriff's sale by his laches in not taking any steps to set it aside for more than a year after the expiration of the time for redemption. The answer to these suggestions is that the rights which Smith is seeking to protect by this action are those of a prior lien-holder, and they were not derived from Lackor, but from the railroad company. These rights became vested in him before the conveyance from Lackor and wife in January, 1877, and they were unaffected by it. The prior equitable lien he then had did not become merged in the legal title he then acquired. The equitable doctrine of merger has no application where it is clearly for the interest of the party holding the two estates that they be kept separate and distinct, unless a contrary

intention is expressly shown. *Horton* v. *Maffitt*, 14 Minn. 289, 293. The existence of any such intention in this case is expressly negatived by the findings, and it was clearly for Smith's interest that the prior lien upon the property, which he got from the railroad company, should not merge in the legal title which he afterwards got of Lackor and wife. It is also established by the findings that neither the sale upon the execution, nor the purchase by Thompson, was induced or influenced by the conduct or representations of plaintiff, or any act or omission on his part, and that the former purchased with full knowledge of all the facts affecting his title, and of the existence of plaintiff's rights as a prior lien-holder. Under these circumstances, plaintiff is not precluded from asserting his rights against Thompson by reason of any estoppel or waiver.

The judgment of the district court must be reversed.