## STATE EX REL. THE SHENANGO FURNACE COMPANY v. J. G. ARMSON AND OTHERS.[1]

December 28, 1928.

No. 26,999.

[1]Reported in 222 N. W. 649.

*Washburn, Bailey & Mitchell,* for relator.

*G. A. Youngquist,* Attorney General, for respondents, constituting the Minnesota tax commission.

TAYLOR, C.

Certiorari to review the order of the tax commission determining the amount of the occupation tax of the relator for the year 1927 on iron ore taken from the Shenango mine in that year. The statute provides that in fixing the value of ore for the purpose of computing the tax the amount of royalties paid on the ore shall be deducted. G. S. 1923, § 2374(4), L. 1921, p. 274, c. 223, § 2. Advance royalties in the form of a lump sum paid for a lease under which the ore is mined come within this provision and are to be deducted. State ex rel. Inter-State I. Co. v. Armson, 166 Minn. 230, 207 N. W. 727; State ex rel. Shenango Furnace Co. v. Armson, 166 Minn. 249, 207 N. W. 735; State ex rel. The Shenango Furnace Co. v. Armson, 172 Minn. 235, 215 N. W. 74. The relator claimed a deduction for advance royalties paid as the purchase price of the lease under which the ore was mined. The commission refused to make the deduction, and whether the relator is entitled to it is the question presented.

The ore was mined under a lease from the fee owner which had been assigned in March, 1901, to the Shenango Iron Mining Company. This company apparently held it for the Oliver & Snyder Steel Company and had no personal interest in it. In July, 1902, the Oliver & Snyder Steel Company sold the lease to the Shenango

Furnace Company (a corporation not connected with the Shenango Iron Mining Company) for the sum of $1,100,000 paid to it therefor by that company, and caused the lease to be assigned to that company. In January, 1906, a new corporation, "The Shenango Furnace Company," was created. It adopted the name of the previously existing corporation with the word "The" prefixed. It will be referred to as the new company and the other as the old company. All the assets of the old company, including the lease in question, were transferred to the new company, and the new company still owns the lease and operates the mine.

The commission seems to have been in doubt whether the relator was entitled to the deduction claimed and apparently disallowed it with the expectation that the matter would be taken into court for a determination of the questions deemed doubtful. The objections urged against making the deduction are in substance: (1) That the evidence fails to show with certainty how much of the $1,100,000 paid for the lease was paid as advance royalties; (2) that the new company is not entitled to the benefit of advance royalties paid by the old company; and (3) that the Oliver & Snyder Steel Company, which sold the lease to the old company, was then the owner of one-half of the capital stock of the old company.

In support of the first objection it is urged that the purchase price of the lease covered not only advance royalties but also the value of machinery and buildings, of an uncompleted shaft, and of exploratory drilling on the property. The machinery and buildings consisted of the hoisting machinery used in sinking the shaft and of temporary buildings to protect it. The only witness who testified concerning them placed their value at $3,000 or $4,000. No deduction was allowable for this item. The shaft had been sunk about 100 feet. While the witness stated that he did not know the cost of the work done in sinking it, he also stated that the usual price for sinking shafts was $50 per foot. The statute, G. S. 1923, § 2374(3), authorizes a deduction for the cost of constructing shafts through which ore is taken; but, as it does not appear that this shaft was ever completed or used, its cost was not deductible. The drilling

was presumably for the purpose of ascertaining the quantity, quality and location of the ore; and the information obtained thereby was doubtless the controlling factor in determining the value of the property and the amount paid for the transfer of the lease. But the drilling was not of a nature to constitute an improvement which could be used in taking out ore, and we see no reason for saying that the cost of that work was covered by the purchase price of the lease except as reflected in the amount paid as advance royalties.

The value added to the property by the buildings and machinery and the uncompleted shaft is insignificant as compared with the sum of $1,100,000 paid for the lease, and probably was not given much consideration in the matter of fixing the price. It is proper however to subtract that value from the price in determining the amount to be deducted as advance royalties. While the evidence might have been more full and definite, we think there is enough to enable the tax commission to make a sufficient allowance for those items and to determine with reasonable accuracy the amount to be applied as advance royalties. The matter of allocating the advance royalties to the ore taken out in different years is not involved.

■ At the time of the transfer from the old company to the new, all the capital stock of both companies was owned by W. P. Snyder. The transactions relating to that transfer received extended consideration in State ex rel. The Shenango Furnace Co. v. Armson, 172 Minn. 235, 215 N. W. 74, in which the facts are fully stated. That case involved a claim for the deduction from the value of the ore mined in the year 1926 of advance royalties claimed to have been paid by the new company for the transfer of the lease from the old company. It was held that the transactions which resulted in the transfer from the old company to the new constituted, in substance, a purchase of capital stock and a mere transformation of one corporation into another, and the deduction was disallowed for that reason. In the instant case the new company asks for a deduction from the value of the ore mined in the year 1927 of the advance royalties paid on such ore by the old company when it purchased the lease from the Oliver & Snyder Steel Company. As the new com-

pany has succeeded to all the rights of the old company, it is entitled to the same deduction to which the old company would have been entitled if it had continued to hold the lease and operate the mine. That the old company would be entitled to the deduction claimed, if it had retained the lease and mined the ore in question, is settled by the prior decisions cited.

The objection predicated on the fact that the Oliver & Snyder Steel Company owned one-half of the capital stock of the old company is probably urged because of the ruling in State ex rel. The Shenango Furnace Co. v. Armson, 172 Minn. 235, 215 N. W. 74, above mentioned. The facts in that case are so different from the facts in this that what was said there concerning the transactions by which W. P. Snyder became the owner of all the stock of two companies and for some unknown reason caused one company to take over all the property and assume all the obligations of the other is not in point here. No transaction in respect to stock was involved in the purchase of the lease by the old company, for that company paid the stipulated price of $1,100,000 in money. The old company and the steel company were independent legal entities, although the latter was a stockholder in the former. A corporation has the same right to purchase property from a stockholder that it has from a stranger. 2 Dunnell, Minn. Dig. (2 ed.) § 2073. Here there is nothing to impugn the good faith of the transaction, and the rights acquired by the old company are not affected by the fact that the purchase was from a stockholder.

We reach the conclusion that advance royalties had been paid on the ore which should have been deducted in fixing its value for the purpose of computing the tax; and the case is remanded for such further action as may be necessary to determine the correct amount of the tax.

HILTON, J. took no part.