## STATE EX REL. OLIVER IRON MINING COMPANY v. J. G. ARMSON AND OTHERS.[1]

September 12, 1930.

No. 27,621.

*Frank D. Adams, Elmer F. Blu* and *Kellogg, Morgan, Chase, Carter & Headley,* for relator.

*G. A. Youngquist,* Attorney General, and *William K. Montague,* Assistant Attorney General, for respondents.

*Abbott, MacPherran, Dancer, Gilbert & Doan,* amici curiae, filed a brief in support of the contention of the relator.

DIBELL, J.

Certiorari to review the determination of the Minnesota tax commission of the amount of taxes due from the Oliver Iron Mining Company for the year 1928 under the provisions of the occupation tax law, L. 1921, p. 274, c. 223, amended by L. 1925, p. 388, c. 307, now embodied in 1 Mason, 1927, §§ 2373, 2374.

On May 31, 1929, the tax commission determined that "the value of all iron ores mined by said company in said state during the calendar year 1928, at the places where the same were brought to the surface of the earth, less the deductions provided for in section 2 of said statutes, is the sum of $26,053,362.01, and that the amount of tax due thereon to the state of Minnesota is the sum of $1,563,201.73"; and it certified to the state auditor taxes against the company for

that amount. The company paid to the state treasurer $1,545,084.02. It claims that the difference, $18,117.71, is an overcharge due to the refusal of the commission to deduct, either as a statutory or non-statutory deduction, the 1928 royalty tax of $301,961.84, which it paid to its lessors, from the total of $26,053,362.01, before the occupation tax of six per cent was computed. Whether it should be deducted is the whole question. It may be considered under this rough classification:

(1) The nature of the 1921 mining occupation tax act, amended in 1925; the nature of the 1923 royalty tax act; and the relationship of the two.

(2) The right of the Oliver company to deduct from the total value of the ore it produced in 1928 the amount of $301,961.84 which it paid to its lessors for royalties in 1928, in fixing the basis or sum upon which to compute the six per cent occupation tax; that is, its right to treat the royalty tax as a statutory deduction.

(3) The right of the Oliver company, if not entitled to make such deduction as a statutory deduction, to deduct it as a cost of production in fixing the value of the ore at the mine upon which the 1921 occupation tax was computed; that is, its right to treat it as a proper nonstatutory deduction.

■ The 1921 mining occupation act so far as important here is as follows:

"Section 1. Every person engaged in the business of mining or producing iron ore or other ores in this state shall pay to the state of Minnesota an occupation tax equal to 6 per cent of the valuation of all ores mined or produced, which said tax shall be in addition to all other taxes provided for by law, said tax to be due and payable from such person on May 1 of the year next succeeding the calendar year covered by the report thereupon to be filed as hereinafter provided.

"Sec. 2. The valuation of iron or other ores for the purposes of determining the amount of tax to be paid under the provisions of Section 1 of this act shall be ascertained by subtracting from the value of such ore at the place where the same is brought to the

surface of the earth, such value to be determined by the Minnesota tax commission:

"1. The reasonable cost of supplies used and labor performed at the mine in separating the ore from the ore body, including hoisting, elevating, or conveying the same to the surface of the earth.

"2. If the ore is taken from an open pit mine, an amount for each ton of ore mined or produced during the year equal to the cost of removing the overburden, divided by the number of tons of ore uncovered, the number of tons of ore uncovered in each such case to be determined by the Minnesota tax commission.

"3. If the ore is taken from an underground mine, an amount for each ton of ore mined or produced during the year equal to the cost of sinking and constructing shafts and running drifts, divided by the number of tons of ore that can be advantageously taken out through such shafts and drifts, the number of tons of ore that can be advantageously taken out in each such case to be determined by the Minnesota tax commission.

"4. The amount of royalties paid on the ore mined or produced during the year.

"5. A percentage of the ad valorem taxes levied for said year against the realty in which the ore is deposited equal to the percentage that the tons mined or produced during such year bears to the total tonnage in the mine.

"The amount or amounts of all the foregoing subtractions shall be ascertained and determined by the Minnesota tax commission. * * *" L. 1921, p. 274, c. 223, amended by L. 1925, p. 388, c. 307, 1 Mason, 1927, §§ 2373, 2374.

Its title provides for the imposition of a tax upon all "engaged in the business of mining or producing iron ore and other ores." It was sustained in Oliver I. Min. Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. ed. 929, as an occupation tax; and so in State ex rel. Shenango Furnace Co. v. Armson, 172 Minn. 235, 215 N. W. 74. It provides specified subtractions from the value of the ore at the surface of the mine in reaching the valuation upon which the occupation tax is computed; and in the course of administration the

court in determining the valuation has sustained deductions not enumerated in the statute in fixing the valuation at the surface of the mines. State ex rel. Inter-State I. Co. v. Armson, 166 Minn. 230, 207 N. W. 727; State ex rel. Bennett Min. Co. v. Armson, 166 Minn. 243, 207 N. W. 732. And deductions are permitted for advance royalties as statutory deductions. State ex rel. Shenango Furnace Co. v. Armson, 166 Minn. 249, 207 N. W. 735; State ex rel. Shenango Furnace Co. v. Armson, 172 Minn. 235, 215 N. W. 74; State ex rel. Shenango Furnace Co. v. Armson, 176 Minn. 125, 222 N. W. 649.

The 1923 royalty tax is a property tax. Marble v. Oliver I. Min. Co. 172 Minn. 263, 215 N. W. 71; Lake Superior Cons. I. Mines v. Lord, 271 U. S. 577, 46 S. Ct. 627, 70 L. ed. 1093, affirming 13 F. (2d) 227. The term "royalty" is defined to be the amount of money or value of property received for permission to mine or remove ore. The statute reads, so far as necessary to consider it now, as follows:

"Section 1. There shall be levied and collected upon all royalty received during the year ending December 31, 1923, and upon all royalty received during each calendar year thereafter, for permission to explore, mine, take out and remove ore from land in this state, a tax of six (6) per cent.

"Sec. 2. For all purposes of this act the word 'royalty' shall be construed to mean the amount in money or value of property received by any person having any right, title or interest in or to any tract of land in this state for permission to explore, mine, take out and remove ore therefrom; and the word 'person' shall be construed to include individuals, copartnerships, associations, companies and corporations." L. 1923, p. 258, c. 226, §§ 1-2, 1 Mason, 1927, §§ 2392-1, 2392-2.

Its constitutionality was sustained as a property tax in Lake Superior Cons. I. Mines v. Lord, 271 U. S. 577, 580, 46 S. Ct. 627, 70 L. ed. 1093, affirming 13 F. (2d) 227, where the court said:

"In 1921, the Minnesota legislature adopted the occupation tax act—chapter 223. It prescribes a charge upon those who engage in

mining, amounting to six per centum of the value of the ore extracted and removed, after deducting costs of operation and royalties. Oliver Iron Mining Co. et al. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. ed. 929, sustained this act. The legislature evidently intended that chapter 226, Laws of 1923, should supplement chapter 223, Laws of 1921, and thus secure payment to the state of six per centum upon the value of all extracted ores, less the expense of raising them. If the owner operates, he must pay this six per centum, under the occupation tax act; if a lessee mines, the act requires him to pay the same amount, less royalty. The act of 1923 lays a charge of six per centum upon the royalty. See State v. Armson, 166 Minn. 230, 207 N. W. 727, 731."

The occupation tax and the royalty tax are complementary and supplementary. State ex rel. Inter-State I. Co. v. Armson, 166 Minn. 230, 207 N. W. 727; State ex rel. Shenango Furnace Co. v. Armson, 172 Minn. 235, 215 N. W. 74; Marble v. Oliver I. Min. Co. 172 Minn. 263, 215 N. W. 71; Lake Superior Cons. I. Mines v. Lord, 271 U. S. 577, 46 S. Ct. 627, 70 L. ed. 1093, affirming 13 F. (2d) 227. In State ex rel. Inter-State I. Co. v. Armson, 166 Minn. 230, 240; 207 N. W. 727, 731, the court said:

"The word 'royalty' as used in L. 1921, p. 274, c. 223, and in L. 1923, p. 258, c. 226, should be given the same meaning for the purpose of determining the tax imposed by each act. Under the earlier act, a tax of 6 per cent is imposed on the occupation of mining; under the later act, a tax of 6 per cent on the royalty paid to the fee owner; but the royalty paid to the fee owner is deducted in arriving at the basis for the computation of the occupation tax. The state does not get the royalty tax from both fee owner and mining company, and is not concerned in a controversy between the two, in which each seeks to shift the burden to the other. Chapter 226 is really complementary to chapter 223 and should be considered in construing and applying the earlier act. The two acts, together with the general tax laws of the state, cover the whole field of taxation of mining property."

And in Marble v. Oliver I. Min. Co. 172 Minn. 263, 268, 215 N. W. 71, 73:

"Ore lands and the business or occupation of mining the ore have been separated. L. 1923, p. 258, c. 226, is complementary to L. 1921, p. 274, c. 223, the two being intended to reach and tax the mining operation as an industry or occupation, and the interest in the land of the owner or lessor where he has granted permission to extract and deplete the ore deposit for a royalty or consideration. ·Besides this there is the law for the taxation of ore lands on the ad valorem basis having regard for the ore not mined, as well as of the surface of the ground."

With this understanding of our mining taxation law we come to the company's claim of right to subtract the six per cent royalty tax for the year 1928 in getting the valuation upon which to compute the six per cent occupation tax for the same year. The company does not object to paying the $301,961.84 royalty tax; because as lessee it covenanted to pay all taxes, including the royalty tax, as its covenants were construed in Marble v. Oliver I. Min. Co. 172 Minn. 263, 215 N. W. 71; but, having paid it, its claim is that it should be deducted as royalty which would lessen its occupation tax six per cent of that sum or $18,117.71.

■ The Oliver company paid royalties to its lessors for the year 1928 to the amount of $6,886,540.14, of which $5,032,697.27 was subtracted in reaching the valuation of $26,053,362.01 upon which the six per cent occupation tax brought the state $1,563,201.73. This sum of $5,032,697.27 upon which the six per cent 1923 royalty tax was cast brings the state the sum of $301,961.84 which the company claims should have been subtracted in ascertaining the valuation upon which the six per cent occupation tax was computed, and if this is so it is overtaxed six per cent of $301,961.84 or $18,117.71. The reason the whole $6,886,540.14 was not deducted, and such a deduction would have been favorable to the company, was because of advance royalties and royalties on state leases, and is not important here.

The company's claim of the deduction of $301,961.84 is not sustained. Under the 1921 act the royalty deducted in establishing the valuation upon which to impose the six per cent occupational tax was a statutory deduction. Why it was made is not important here. The 1923 royalty tax is a tax on property, in the form of royalty, and is not deducted in establishing the valuation upon which to compute the occupational tax. It is a strained construction that calls the tax royalty, which is a tax on mining property, a part of the royalty for purposes of deduction under § 2. The suggestion is made that the royalty tax merged into the royalty so as to become a part of it. We do not think so. The tax statute, it is true, should be liberally construed in favor of the taxpayer. Still the tax is an exaction of statute. We are construing a statute and not a contract. The legislature was after one six per cent tax on ore removed. If it had thought to give a deduction or forgive a part of the tax which it had just imposed it is quite sure that some verbal trace of its purpose would appear.

■ The Oliver company claims that if it cannot have a subtraction of this $301,961.84 as a statutory subtraction it should have it as a nonstatutory deduction because it affects the value of the ore at the surface of the mine and upon such value the six per cent occupation tax is computed.

There is no open market in Minnesota at the surface of the mines for iron ore. There is a market price for iron ore at the lower lake ports based upon sales made in the early spring which is taken as fairly representative of market value. To establish a value at the surface of the Minnesota mines upon which to compute the occupation tax a practical plan was devised satisfactory to the commission and the mine operators whereby the lower lake price was taken and deductions made for costs incurred back to the surface of the mines and thereby a fair value established upon which to compute the six per cent tax. This plan is sufficiently discussed in State ex rel. Inter-State I. Co. v. Armson, 166 Minn. 230, 207 N. W. 727, and numerous cases have applied it since.

The claim here is that the royalty tax is an item of cost accruing between the time the ore is first brought to the surface of the earth

and its delivery at the lower ports the same as transportation or other costs; that it increases the market value of the ore and should be deducted as an item of cost in working back to the mine to get the true value; and that if this is done the state will receive the full, six per cent of the value of the ore. We are hardly in accord with this view. The legislature knew the operation of the occupation tax. It knew that royalties in considerable amounts were deducted from the value of the ore produced. In its view this was an interest in property escaping taxation except as the ad valorem tax reaches all mining property. It was directing its taxing power at this interest in real property.

It is a mere circumstance that the Oliver company, the lessee, is paying the royalty tax instead of its lessors. It is doing so because of its covenants. Marble v. Oliver I. Min. Co. 172 Minn. 263, 215 N. W. 71; Fryberger v. Inland Steel Co. 174 Minn. 139, 218 N. W. 553; Fraser v. Vermillion Min. Co. 175 Minn. 305, 221 N. W. 13. In these cases the covenants were about the same as in the one before us. It may be noted in passing that in the Marble case it was held not a matter of consequence that the royalty tax of 1923 was not a part of our statutory law at the time the leases were given. There is no question about this here, but we eliminate such a suggestion by citing our former decision which considered the point. If the lessors had paid the royalty tax they would have collected from the Oliver. The statute makes the situs of the royalty in this state; and makes the tax a specific lien upon all the right and title of the person to whom it is payable in the land.

The mining taxation situation is just this: Mining lands and mined ore are classified and taxed on an ad valorem basis at a percentage of valuation higher than other classes of property. The tax rates vary on valuations throughout the state. The mine owner if he mines pays a six per cent occupation tax on ore extracted, and this is additional to his ad valorem land tax. The lessee who mines pays a six per cent occupation tax based on the value of the ore produced upon a valuation fixed by the statute. One element in fixing the valuation is the subtraction of royalties paid his lessor. Whether he pays the ad valorem land tax or any other tax is a

matter of contract. The net result is that the state gets in addition to the ad valorem tax a tax of six per cent on all ore removed—six per cent when it gets its occupation tax, less deductions for royalties, and six per cent on the deductions when it collects the royalty tax; or if the owner mines six per cent on all the ore produced. The ore does not pay two six per cent taxes in addition to the ad valorem. The company is not entitled to a statutory deduction of the royalty tax as it is of the royalty it pays its lessors.

Order affirmed and writ quashed.