STATE EX REL. SUSQUEHANNA ORE COMPANY v. GUNNAR B. BJORNSON AND OTHERS.[1]

No. 30,179.

March 8, 1935.

*Kellogg, Morgan, Chase, Carter & Headley, Belden, Young & Veach,* and *W. C. Scott,* for relator.

*Harry H. Peterson,* Attorney General, and *William S. Ervin,* Assistant Attorney General, for respondents.

*George F. Gage, Harry E. Boyle,* and *George E. Wallace,* as members of the tax commission, filed a brief *amici curiae* on behalf of the commission in support of respondents' petition for a reargument and also filed a brief upon the reargument.

LORING, JUSTICE.

This is a proceeding by *certiorari* pursuant to 1 Mason Minn. St. 1927, § 2383, to review an order of the tax commission determining the amount of occupation tax due from the relator for the year 1933.

1 Mason Minn. St. 1927, § 2373, imposes an occupation tax of six per cent on all ores mined or produced in this state. Section 2374 prescribes the manner in which the value of the ores shall be ascertained and authorizes the deduction therefrom of royalties paid on the ore mined during the year. The question presented by this appeal is whether or not a ratable proportion of certain

[1]Reported in 259 N. W. 392, 262 N. W. 574.

obligations of the relator's assignor, which the relator assumed when it took an assignment of the leasehold, may be deducted from the occupation tax as royalty paid.

In 1902 Morton Dennison Hull and others leased the Susquehanna mine to William H. Cole, reserving a royalty of 25 cents per ton. Cole assigned the lease to the Buffalo and Susquehanna Iron Company, which mortgaged it to the New York Security and Trust Company as trustee to secure a $3,000,000 bond issue. In 1910 Buffalo and Susquehanna assigned the lease to Rogers-Brown Iron Company, which merged with Buffalo and Susquehanna and became liable for the mortgage debt. Rogers-Brown mortgaged the leasehold to the Bankers Trust Company of New York as trustee to secure an $8,000,000 bond issue, together with a $72,725 premium thereon. December 29, 1925, Rogers-Brown assigned to the relator the leasehold subject to the two mortgages and to the lien for real estate taxes for 1925 amounting to $214,385.28. Included in the sale of the leasehold were the supplies, tools, machinery, and equipment located on the leased premises. The sole consideration for the assignment and bill of sale was the assumption by the relator of the mortgage indebtedness above referred to, then reduced to $4,004,000, together with the premium of $72,725 thereon and the 1925 real estate taxes, in all aggregating the sum of $4,291,110.28. Of this, $173,667.30 was for the equipment, which left $4,117,442.98 as the purchase price for the assignment of the lease which contained no reservation of any right of reëntry or any lien to secure performance of the agreement by the relator to pay the mortgage indebtedness and taxes which it had assumed to pay in consideration of the assignment. The relator has paid the part of the assumed obligations which has become due, including the 1925 real estate taxes, all of the outstanding Buffalo and Susquehanna bonds, and $1,645,000 on the Rogers-Brown bonds, as well as $41,125 of the premium on the last mentioned bonds.

The question presented by this appeal is whether in computing the relator's occupation tax on ore mined in 1933 a ratable proportion of the obligations which relator assumed to pay for the assignment of the leasehold should be deducted. The tax commission

allowed such deduction for the years 1926 to 1932, inclusive. These deductions were in addition to the 25 cents per ton royalty provided in the original lease. 1 Mason Minn. St. 1927, § 2392-1, provides for a tax of six per cent on all royalties received for permission to explore, mine, take out, and remove ore from land in this state, so that in addition to the real estate taxes, if the owner of mining property operates it, he pays the occupation tax on all ore mined therefrom without deduction, whereas if the property is under lease the owner pays the royalty tax on the royalties received and the operator pays the occupation tax but may deduct from the value of the ore upon which the occupation tax is based the sums paid for royalty. Royalties reserved by intermediate sublessors or assignors of the lease are taxed and deducted in like manner. 1 Mason Minn. St. 1927, § 2392-5. The occupation tax and the royalty tax are complementary and supplementary. State ex rel. Oliver I. Min. Co. v. Armson, 181 Minn. 221, 232 N. W. 35.

It is conceded by the tax commission that had the relator paid the $4,117,442.98 directly to Rogers-Brown in cash for the assignment of the leasehold it would have been a payment of royalty, and a ratable proportion thereof would have been properly deductible each year as such. It would under our decisions be treated as advance royalty. State ex rel. Shenango Furnace Co. v. Armson, 172 Minn. 235, 215 N. W. 74.

In State ex rel. Inter-State I. Co. v. Armson, 166 Minn. 230, 238, 207 N. W. 727, 730, this court considered the proper definition of "royalty." It is a share of the product of a mine reserved to the owner or the payment made him for the privilege of mining and removing ore. It is the compensation paid for that privilege. It is rent, not the purchase price of ore in place. If it is rent it is royalty. It may be paid in a fixed sum at the execution of the lease, or at its assignment, or at a future date, or in instalments. "If the grant of the privilege of mining and taking the ore from the land is the consideration for the payments, they are royalties." State ex rel. Inter-State I. Co. v. Armson, 166 Minn. 230, 239, 207 N. W. 727, 731. If relator had promised at a future date to pay Rogers-Brown the money it agreed to pay its creditors it would

have been royalty. We cannot see any distinction between that situation and the promise made to pay debts as they accrued and to pay the accrued taxes. The obligation to pay these was the sole consideration for the privilege of removing the ore. It was rent and therefore royalty.

At the time that the transaction occurred the two companies were presumably solvent and the obligations of each worth their face value. Grosse v. Cooley, 43 Minn. 188, 45 N. W. 15, 16. That value was definitely fixed by the terms of those obligations. The assumption agreement was not a contract of indemnity but was a primary obligation to pay, Gustafson v. Koehler, 177 Minn. 115, 224 N. W. 699; Heins v. Byers, 174 Minn. 350, 219 N. W. 287; Peterson v. Herington, 169 Minn. 65, 210 N. W. 617; and to pay the 1925 real estate taxes as well as debts. The accrued taxes were a part of the obligation assumed. So were the Buffalo and Susquehanna bonds. The record indicates they had become obligations of Rogers-Brown. There is no justification in the record for a finding of bad faith in this transaction.

It may be that the state is not now in a position to collect a royalty tax from Rogers-Brown. The collectibility of the tax is not the test of its deductibility. The state may protect itself in such situations by appropriate legislation. That it had not done so at the time of this transaction is no reason why it may now collect as occupation tax what is due it as royalty tax.

These proceedings are remanded to the tax commission with directions to allow a deduction as royalty of a ratable proportion of obligations of Rogers-Brown Iron Company assumed by relator in consideration of the assignment of the lease herein referred to.

AFTER REARGUMENT.

On October 11, 1935, the following opinion was filed:

PER CURIAM.

We adhere to our former decision in this case. The attorney general and the tax commission have very earnestly and very ably presented the reasons which they feel should persuade us to depart from the decision already rendered, but to do so we should have to

overrule the cases which this court has decided over a series of years. The tax commission contends that consideration received for the assignment of a mining lease is not royalty unless the relation of landlord and tenant continues to exist between assignor and assignee and that in order to be royalty such consideration must be in the nature of rent from a sublessee. Examination of the briefs discloses that that contention was squarely raised in State ex rel. Shenango Furnace Co. v. Armson, 172 Minn. 235, 242, 215 N. W. 74, and decided against the contention of the commission. That decision has stood for eight years. Under present provisions for deducting royalty taxes at the source, we see no disadvantage to the state in this holding. The state gets its tax either as royalty tax or as occupation tax. If efforts are made to evade the tax, such as feared by the commission, it may prevent such a result by appropriate investigation and findings.

The 1925 taxes had accrued and were by statute a lien on the premises although as between grantor and grantee they had not become so. We regard the situation as no different from what it would be if the assignee had paid or promised to pay in cash to the assignor an amount equal to the 1925 taxes. It was simply additional consideration for the right to remove ore.