STATE EX REL. INTER-STATE IRON COMPANY v. GEORGE E. WALLACE AND OTHERS.[1]

January 17, 1936.

No. 30,624.

*Abbott, MacPherran, Dancer, Gilbert & Doan, W. D. Evans,* and *Hale Hill,* for relator.

*Harry H. Peterson,* Attorney General, and *William S. Ervin,* Assistant Attorney General, for respondents.

HOLT, JUSTICE.

*Certiorari* to review a decision of the Minnesota tax commission.

In 1901 Peter L. Kimberly was the owner of (1) the fee of the Lincoln Mine, (2) all iron ore and other ore in the Columbia Mine, and (3) the Northern Ore Company, a corporation, which was the owner of a state lease of the Grant Mine, a state-owned property.

[1]Reported in 264 N. W. 775.

On April 16, 1901, Kimberly entered a written agreement with Jones & Laughlins, Limited, a Pennsylvania limited copartnership, acting for the benefit of relator. Under this agreement, if title to these properties was satisfactory, Kimberly was to be paid $750,000 and he was to deposit in escrow a 50-year lease of the Lincoln Mine on a royalty basis of 20 cents a ton for the ore mined, and a 50-year lease of the Columbia Mine, on a royalty basis of 10 cents a ton, and cause the Northern Ore Company to deposit in escrow a sublease of the Grant Mine. The agreement, with some modifications not here material, was carried out; the $750,000 was paid to Kimberly; and the rights of Jones & Laughlins, Limited, thus acquired were thereafter formally transferred to relator, which thereby obtained the leases to the Lincoln Mine and the Columbia Mine, each lease expiring on April 29, 1951. By deed of July 10, 1934, the Buhl-Kimberly Corporation, which had succeeded to the title and interests of Peter L. Kimberly in the two mines and properties mentioned, conveyed the same to the relator. Prior to the year 1934 respondents permitted a ratable deduction of the advance royalty paid by relator on the ore mined and produced by it from the Lincoln Mine. No ore has been mined from the Columbia Mine. But for the year 1934 respondents allow relator no deduction from its occupation tax either on account of the $5,000 current royalty paid or on account of the advance royalty payment of $750,000. The reason was, as urged by the attorney general, that the acquisition of the fee terminated the leases by merger.

We have held in State ex rel. Corrigan-McKinney Steel Co. v. Wallace, 196 Minn. 199, 264 N. W. 773, that deduction of advance royalty paid cannot be made upon the occupation tax for ore mined and shipped by the owner after the lease upon which the advance royalty was paid has ended. In the instant case the leases are not terminated, unless the acquisition by relator of the fee title of Peter L. Kimberly as a matter of law terminated the leases. 35 C. J. p. 1056, § 220, states:

"Where the lessee of land or his assignee becomes the owner thereof in fee, the lease is terminated, and the lesser estate is

merged in the greater, where the rights of no other parties have intervened between the execution of the lease and the contract to sell, unless an intention is in some way expressed that no merger is to take place, and the burden of proving such intention rests on the party claiming that there has been no merger."

From the conveyance itself this clause bears upon the question of merger:

"By mesne conveyances and assignments, the grantor and grantee herein have become, respectively, the lessor and lessee under said lease, and the intent hereof is to merge the title to said premises in the grantee herein, and divest the said grantor of all right, title and interest thereto, including the right to receive any further royalties under said lease."

The intention was not to merge the lease in the fee, but the reverse, or, in other words, to keep the lease alive, but without obligation to pay royalty on ore mined thereafter. The quoted clause from the conveyance implies that the advance royalty of $750,000 paid for all the merchantable ore then in the mine. Where it is to the interest of one of the parties to a transfer that there be no merger of title accomplished thereby, equity will so determine. A conveyance by a mortgagor to a mortgagee must stand on the same basis in respect to merger as a conveyance by a lessor to a lessee of ore land. In this state merger is governed by equitable principles. Flanigan v. Sable, 44 Minn. 417, 46 N. W. 854. In Smith v. Lytle, 27 Minn. 184, 192, 6 N. W. 625, 626, the court said:

"The equitable doctrine of merger has no application where it is clearly for the interest of the party holding the two estates that they be kept separate and distinct, unless a contrary intention is expressly shown."

See also Converse v. Jenson, 158 Minn. 209, 197 N. W. 490; Thompson v. First Nat. Bank, 180 Minn. 552, 555, 231 N. W. 234, 236, in which it is stated:

"Merger rests largely in intention, actual or presumed, of the person in whom the interests are united. His welfare is an impor-

tant element [citation of authorities]. If the intention has not been expressed the court will seek for it in all the circumstances involved. If it appears therefrom to be for the benefit of the party acquiring both interests that merger shall not take place but that the lesser estate shall survive, then his intention that such result will follow will be presumed and equity will carry that intention into execution by preventing a merger."

In the instant case the state suffers no loss by permitting the deduction of the advance royalty paid on the leases in question for the ore mined and produced each year until the end of the leases on April 29, 1951, because had relator not taken the conveyance of the fee there would have been no question of the right of deductibility on account of this advance royalty of $750,000 on the authorities referred to in State ex rel. Corrigan, McKinney Steel Co. v. Wallace, 196 Minn. 199, 264 N. W. 773. Here the lessee intends to and continues to operate the mines involved and should be entitled to deduct upon its occupation tax for ore mined and shipped each year a ratable proportion of any advance royalty paid until the expiration of the lease under the terms of which it was paid, but for no longer period.

The decision of the Minnesota tax commission herein is vacated and set aside, and the commission is directed to compute and levy the occupation tax of relator for the year 1934 in harmony with this opinion.