# STATE EX REL. CORRIGAN, McKINNEY STEEL COMPANY v. GEORGE E. WALLACE AND OTHERS.[1]

January 17, 1936.

No. 30,618.

*Thomas F. Patton, George W. Morgan, Belden, Young & Veach,* and *Kellogg, Morgan, Chase, Carter & Headley,* for relator.

*Harry H. Peterson,* Attorney General, and *William S. Ervin,* Assistant Attorney General, for respondents.

HOLT, JUSTICE.

*Certiorari* to review a decision of the Minnesota tax commission.

In January, 1903, Frank H. Carleton and others, fee owners of iron ore lands in Itasca county, this state, executed to Louis W. Hill a mining lease of the St. Paul Mine thereon for the period of 25 years at a royalty to be paid by the lessee to the lessors of 35 cents on each ton of merchantable ore mined and shipped from the premises. The lease also contained provisions for the payment of a minimum royalty each year and crediting the same against the royalty payable on ore subsequently mined and shipped. Hill, in July, 1903, executed a sublease of the mine to the St. Paul Iron Mining Company, which on December 31, 1916, conveyed the sublease to the Quinnesec Iron Mining Company, whose name was changed and is now the Corrigan, McKinney Steel Company. By September 5, 1923, there had been paid to the lessors, or fee owners,

[1]Reported in 264 N. W. 773.

aggregate minimum royalties of $1,025,844.43 in excess of royalty on the actual tonnage shipped from the mine. On last named date the Sargent Land Company, then the fee owner of the mine and leased premises, conveyed to relator for $1,800,000 cash paid its entire interest in the property subject to the outstanding lease of Louis W. Hill, the conveyance containing this provision:

"Fourth: It is mutually understood and agreed by the Grantor and Grantee that the Grantor has heretofore received and is to keep as its own the amount of one million, twenty-five thousand, eight hundred and eighty-four dollars and forty cents ($1,025,884.40) which amount has been paid to it prior to the date of this indenture by the lessee or his successor named in the aforesaid lease dated January 1, 1903, made by Frank H. Carleton and others, as lessors to Louis W. Hill, as rent for which, however, the lessee named in the aforesaid lease, or his successor, is entitled to mine, remove and ship from the land above described in accordance with the provisions of said lease sufficient ore at the royalty price to exhaust said credit without additional payment for the ore. The Grantee, by its acceptance of this Indenture obligates and binds itself to the performance of this mutual understanding."

The lease to Hill expired by its terms in 1928 before all the ore had been mined and shipped for which advance royalty had been paid. The excess now is claimed to be $909,795.34, above the ore shipped; or, in other words, the advance royalty paid would pay for the mining and shipping of 2,599,415 tons more.

By 1 Mason Minn. St. 1927, § 2392-1, a tax of six per cent is levied and collected upon all royalties received by the fee owner during each calendar year "for permission to explore, mine, take out and remove ore from land in this state." 1 Mason Minn. St. 1927, § 2373 (L. 1921, c. 223, § 1) reads:

"Every person engaged in the business of mining or producing iron ore or other ores in this state shall pay to the state of Minnesota an occupation tax equal to 6 per cent of the valuation of all ores mined or produced, which tax shall be in addition to all other taxes provided for by law, said tax to be due and payable from such

person on May 1 of the year next succeeding the calendar year covered by the report thereupon to be filed as hereinafter provided."

The next section [§ 2374] provides for the valuation of the ore thus mined and for the deduction therefrom of certain expenses connected with the mining of the ore. The fourth subdivision thereof is of importance here, reading:

"4. The amount of royalties paid on the ore mined or produced during the year."

The question here presented is: May the advance royalty paid by a lessee or his successor in interest be deducted from the occupation tax accruing for ore mined and shipped by the owner of the mine after the term of the lease is terminated? There is no doubt that advance royalty paid by a lessee for permission to mine and remove ore, prior to the enactment of the statutes mentioned, may, while the lease is in force and effect, be deducted ratably on the tonnage of "ore mined or produced during the year." State ex rel. Inter-State Iron Co. v. Armson, 166 Minn. 230, 207 N. W. 727; State ex rel. Shenango Furnace Co. v. Armson, 166 Minn. 249, 207 N. W. 735; State ex rel. Shenango Furnace Co. v. Armson, 172 Minn. 235, 215 N. W. 74; State ex rel. Shenango Furnace Co. v. Armson, 176 Minn. 125, 222 N. W. 649; State ex rel. Susquehanna Ore Co. v. Bjornson, 194 Minn. 649, 259 N. W. 392, 262 N. W. 574. But there seems to us no reasonable ground for the claim that such advance royalty paid by the lessee may, after the lease is ended, be applied in deduction of the occupation tax for ore mined or produced under some other permission or right than the lease for which the advance royalty was paid, or when the owner mines and ships ore after the expiration of the term of a mine lease.

The relator contends that the provision quoted above from the conveyance of the Sargent Land Company (which had succeeded to the fee title of the lessors) as grantor, to the McKinney Steel Company (to whose title relator has succeeded) as grantee, reserved the unexhausted advance royalty so that it may properly be applied in reduction of the occupation tax on ore mined and produced by relator subsequent to the expiration of the lease. We do not think

202

the parties to a mining lease or their successors in interest can by agreement make reductions in the occupation tax not specified in § 2374 of the Code. The ore mined and produced by relator during the year 1934 and for which the occupation tax here involved was levied was not mined or produced by permission granted by the lease on which the advance royalty had been paid. So there was nothing from which the advance royalty so paid could be deducted. It seems unreasonable that when the lessee of a mining lease buys the fee shortly before the expiration of the mining lease the parties shall be able to stipulate so as to affect the amount of the occupation tax upon ore mined after the termination of the lease. No authority has been cited under laws similar to ours where this has been accomplished. We think it clear under the authorities first cited that deductions were proper from September 5, 1923, the date of the conveyance of the Sargent Land Company to relator, until the lease expired in 1928.

The decision of the Minnesota tax commission appears to be in accordance with the statute and is affirmed.