STATE EX REL. J. A. A. BURNQUIST v. COMMISSIONER OF TAXATION.
MESABA-CLIFFS MINING COMPANY, INTERVENER.[1]

January 10, 1941.

No. 32,642.

[1]Reported in 295 N. W. 652.

*J. A. A. Burnquist,* Attorney General, and *P. F. Sherman,* Assistant Attorney General, for relator.

*Abbott, MacPherran, Dancer & Zuger,* for intervener-respondent.

HOLT, JUSTICE.

*Certiorari* to review a decision of the board of tax appeals.

There is no dispute as to the facts. Intervener, the taxpayer here involved, on January 1, 1938, held two separate mining leases to two mines in Itasca county. The one mine is the Holman-Brown and the other the Canisteo. They are not contiguous. The owner and lessor is the same party in both leases. The Holman-Brown lease is dated July 1, 1926, and the Canisteo, July 1, 1929. Each lease provides for a minimum output or, in lieu, advance royalty payments. By written agreements, executed October 1, 1937, and June 14, 1938, the lessor and lessee transferred or applied $469,492.56, advance royalty payments credited to the Holman-Brown lease to the Canisteo. By written notice, the lessee, as provided in the lease, cancelled and terminated the Canisteo lease as of December 31, 1938. During 1938, intervener mined about 778,000 tons of ore from the Canisteo, being 578,000 tons above the minimum stipulated in the lease. In assessing the occupation tax upon this ore the tax commission refused to deduct the said royalty credits transferred as stated to the Canisteo lease. Had the deduction been made, the occupation tax would have been reduced by $38,233.29. The tax commissioner, reviewing the action of the tax commission, held the lessee of the Canisteo mine entitled to the deduction and abated the occupation tax by the amount stated. The board of tax appeals affirmed, one member dissenting. On relation of the attorney general, *certiorari* issued to review the decision.

The question presented for decision is: When there are two mining leases in force upon separate mines, in each of which the lessee and the lessor are the same party, may they by agreement transfer or apply the advance royalty payments credited upon one lease to the other having no such credits? The statutes relating

to the occupation tax upon ore mined and its complement, the tax upon royalties paid for permission to explore for and mine ore are 1 Mason Minn. St. 1927, §§ 2373 to 2392, and §§ 2392-1 to 2392-13. Subsequent amendments have no bearing upon the question now before us. The object of these statutes is to assess and levy a tax on the value of every ton of ore mined during the year. If the owner of mineral land leases it to another for the purpose of mining the ore therein for a consideration or royalty to be paid, the lessor must pay a specified tax upon such royalty; but, in fixing the occupation tax upon the ore mined by the lessee, the royalty so paid to the lessor is a deductible item (§ 2374[4]). Royalty is defined by § 2392-2. The party paying a royalty for the privilege of exploring for and mining ore upon a tract of mineral land must report the amount thereof and any other information required by the tax commission in order to enable it to determine the occupation tax. Both the recipient and the payer of royalty are required to make true reports thereof to the tax commission (§§ 2392-3 and 2392-4). The nature of the occupation tax and of the royalty tax is fully considered and discussed in State ex rel. Inter-State I. Co. v. Armson, 166 Minn. 230, 207 N. W. 727, and State ex rel. Shenango Furnace Co. v. Armson, 172 Minn. 235, 215 N. W. 74. In Marble v. Oliver I. Min. Co. 172 Minn. 263, 215 N. W. 71, the controversy was as to the right of the lessor to recover from the lessee, under the covenants of the lease, the royalty tax paid by the lessor. Other decisions involving some phase of the occupation tax and deductions for advance royalty are State ex rel. Shenango Furnace Co. v. Armson, 176 Minn. 125, 222 N. W. 649; State ex rel. Oliver I. Min. Co. v. Armson, 181 Minn. 221, 232 N. W. 35; State ex rel. Susquehanna Ore Co. v. Bjornson, 194 Minn. 649, 259 N. W. 392, 262 N. W. 574; State ex rel. Corrigan, McKinney Steel Co. v. Wallace, 196 Minn. 199, 264 N. W. 773; State ex rel. Inter-State I. Co. v. Wallace, 196 Minn. 212, 264 N. W. 775. However, in none of these decisions was the question now before us presented or decided. It is claimed by relator that State ex rel. Inter-State I. Co. v. Armson, 166

Minn. 230, 207 N. W. 727, and State ex rel. Shenango Furnace Co. v. Armson, 172 Minn. 235, 215 N. W. 74, indicate that advance royalty credits on one lease cannot be transferred or applied by the parties upon another lease. It is to be noted that the issue in those cases was the determination of the value of the ore mined. It appears that iron ore mined from one mine or one tract of mineral land in the same range differs in value from that produced from another mine, and sometimes to such extent that it is not marketable unless mixed with other ore or is beneficiated. It was therefore held that in fixing the value of the ore mined for the purpose of assessing the occupation tax the ore produced at each mine should be taken by itself and should not be combined with ore from other mines though operated by the same party. State ex rel. Corrigan, McKinney Steel Co. v. Wallace, 196 Minn. 199, 264 N. W. 773, is also relied on by relator; but that was where the owner or lessor, after the lease had expired, sought to have the advance royalties credited thereon deducted from the occupation tax on the ore mined after the expiration of the lease, and we held the deduction not allowable.

In the instant case both leases were in force and effect when the transfer of the advance royalty was made. The amount of the royalty in a mining lease between private parties is no concern of the state, provided the royalty tax is paid thereon. The royalty may be modified or changed at the will of the parties thereto so long as there is no attempt thereby to evade any tax. No reason occurs to us why, as between the parties to such leases, the advance royalty credit upon one lease may not be transferred or applied upon another unexpired lease. The state does not stand to lose any tax in the transaction. If ore is mined from the Holman-Brown mine by the lessee after December 31, 1937, the full current occupation tax will be received by the state. It had received the royalty tax in full on the royalties credited on the Holman-Brown lease before such credit was applied upon the Canisteo lease. It also received the full occupation tax on every ton of ore mined from the Canisteo during 1938. In State ex rel. Inter-State I. Co.

v. Wallace, 196 Minn. 212, 215, 264 N. W. 775, 776, it was held that a merger did not occur where a lessee in a lease having advance royalty credits took a conveyance of the lessor's title, so that the lessee mining the ore under the unexpired lease could apply the advance royalty credit in reduction of the occupation tax. In so holding we said:

"In the instant case the state suffers no loss by permitting the deduction of the advance royalty paid on the leases in question for the ore mined and produced each year until the end of the leases on April 29, 1951, because had relator not taken the conveyance of the fee there would have been no question of the right of deductibility on account of this advance royalty of $750,000 on the authorities referred to in State ex rel. Corrigan, McKinney Steel Co. v. Wallace, 196 Minn. 199, 264 N. W. 773. Here the lessee intends to and continues to operate the mines involved and should be entitled to deduct upon its occupation tax for ore mined and shipped each year a ratable proportion of any advance royalty paid until the expiration of the lease under the terms of which it was paid, but for no longer period."

Relator also claims that advance royalty credits cannot be transferred by the parties from one lease to another for the reason that such credits are liens upon the land or mine leased (§ 2392-8). But upon all the advance credits the royalty tax had been paid the state, so there could be no lien. It might also be said that no agreement between lessee and lessor of a mining lease can be permissible in respect to advance royalties upon which the tax has not been paid.

There is no suggestion in the record that in this transfer or application of advance royalty payment the parties to the transaction intended to evade any tax, or that thereby the state will lose any lawful tax to which it is entitled.

The decision of the board of tax appeals is affirmed.

MR. CHIEF JUSTICE GALLAGHER, being engaged on the pardon board, took no part in the consideration or decision of this case.